Present: Carrico, C.J., Compton, Lacy, Hassell, Koontz, and
Kinser, JJ., and Stephenson, Senior Justice

DANIEL L. JONES AND CHARLES JONES,
 CO-ADMINISTRATORS OF THE ESTATE OF BOBBY JONES
                                        OPINION BY
v.  Record No. 971952    SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                        June 5, 1998
SHEILA A. ELEY, ET AL.


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                         Randolph T. West, Judge

     In this paternity suit, the trial court found by clear and

convincing evidence that Sheila A. Eley and Nathan A. Eley (the

Eleys), who were born out of wedlock, are the biological

children of Bobby Julius Jones, deceased.  The principal issue

in this appeal is whether the evidence supports that finding.

                                  I

     On June 15, 1995, the Eleys filed a petition, pursuant to

Code § 64.1-5.1, to establish that Bobby Julius Jones, who died

February 24, 1995, was their biological father.  Daniel Jones,

Charles C. Jones, and David L. Jones, co-administrators of Bobby

Jones' estate (the co-administrators), contested the paternity

claim.  The co-administrators are Bobby Jones' brothers and

claim to be his sole heirs at law.[1]

     On May 30, 1997, the trial court conducted an ore tenus

hearing.  On June 19, 1997, the court entered a final order,

_____

[1] David L. Jones died on July 3, 1996, and Daniel and Charles
Jones continued to serve as co-administrators.

finding by clear and convincing evidence that the Eleys are the biological children and, therefore, the legal heirs at law of Bobby Jones.  The co-administrators appeal.

II

The Eleys prevailed at trial; therefore, pursuant to a well-established principle of law, they are entitled to have the evidence and all reasonable inferences deducible therefrom viewed in the light most favorable to them.

In 1957, Alice Eley and Bobby Jones began dating each other.  Although they never married, they continued to maintain a close relationship.  Bobby and Alice lived together continuously during the seven years preceding Bobby's death.

Alice Eley is the biological mother of Sheila Eley, born in November 1958, and Nathan Eley, born in December 1960.  Alice testified that Bobby was the children's biological father.[2]

According to Alice, Bobby assumed financial responsibility for the Eleys until they became adults.  Bobby gave Alice money "every week" for their support, and he provided extra money when needed.  Bobby also sat for a "family portrait," and he and Alice took pictures "throughout the lifetimes with the kids."

Bobby acknowledged to a number of family members and friends that the Eleys were his children.  During his last

_____

[2] DNA testing was also undertaken.  Two laboratories, however, were unable to perform the test on Bobby's DNA sample.

2

illness and shortly before his death, Bobby acknowledged to his attending physician that the Eleys were his children, and the physician testified that Nathan was Bobby's "spitting image."

The Eleys testified that their relationship with Bobby was that of parent and children. They recounted how Bobby often would "pick [them] up" and take them to various places such as parks and movie theaters. On several occasions, Bobby took them to Jones family reunions and gatherings in North Carolina. Bobby bought them clothes, and he "always" took Nathan to the barbershop. He often attended high school and college basketball games in which Nathan participated. After Sheila had children, Bobby had a close relationship with his grandchildren, whom he affectionately referred to as his "grandboys."

On December 13, 1974, Bobby signed an insurance beneficiary designation form on which he stated that Sheila Eley was his daughter and Nathan Eley was his son. Sheila received $12,000 as the named beneficiary of Bobby's certificate of deposit with his employer's credit union. She also received insurance proceeds of approximately $25,000 as the named beneficiary of Bobby's life insurance policies. Bobby named Nathan the beneficiary of approximately 160 bonds having a value "well over $10,000."

When Bobby died, the Eleys, along with Daniel Jones, made the funeral arrangements. Sheila had Bobby's mail forwarded to

3

her home so she could pay his outstanding debts.  The Eleys paid

Bobby's hospital bill, doctor bills, funeral and burial

expenses, and property tax.

### III

Great deference is accorded a trial court's factual

findings.  This is so because the judge, as fact finder, sees

and hears the witnesses and, therefore, is better able to

determine their credibility and weigh their testimony.  Tuomala

v. Regent University, 252 Va. 368, 375, 477 S.E.2d 501, 505-06

(1996).  Consequently, a trial court's factual findings will not

be disturbed on appeal unless they are plainly wrong or without

evidence to support them.  Code § 8.01-680; Tauber v.

Commonwealth, 255 Va. 445, 452, ___ S.E.2d ___, ___ (1998).

Code § 64.1-5.2 provides that "evidence that a man is the

father of a child born out of wedlock shall be clear and

convincing."  The section also provides that the evidence "may

include, but shall not be limited to" eight enumerated items.[3]

---

[3] The enumerated items in Code § 64.1-5.2 are as follows:

> 1. That he cohabited openly with the mother during all of the ten months immediately prior to the time the child was born;

> 2. That he gave consent to a physician or other person, not including the mother, charged with the responsibility of securing information for the preparation of a birth record that his name be used as

The co-administrators contend that the evidence is insufficient to prove that Bobby was the biological father of the Eleys because none of the eight items set forth in Code § 64.1-5.2 were proved. While it is true that none of the eight items were proved, the statute, as previously noted, expressly provides that the evidence relating to paternity "shall not be limited to" those items. Therefore, we must examine the evidence that the trial court did consider in finding that Bobby was the Eleys' biological father.

The evidence shows that Bobby acknowledged his paternity to a number of people, one of whom was his treating physician

the father of the child upon the birth records of the child;

3. That he allowed by a general course of conduct the common use of his surname by the child;

4. That he claimed the child as his child on any statement, tax return or other document filed and signed by him with any local, state or federal government or any agency thereof;

5. That he admitted before any court having jurisdiction to try and dispose of the same that he is the father of the child;

6. That he voluntarily admitted paternity in writing, under oath;

7. The results of medically reliable genetic blood grouping tests weighted with all the evidence; or

8. Medical or anthropological evidence relating to the alleged parentage of the child based on tests performed by experts.

5

during his last illness. This disinterested witness testified not only that Bobby acknowledged to him that the Eleys were his children, but also that Nathan Eley was Bobby's "spitting image."

The evidence also reveals that Bobby's interaction with the Eleys was indicative of a father and children relationship. When the Eleys were young, Bobby would take them to various places for recreation and entertainment. Bobby sat for family photographs with Alice and the Eleys, and he took the Eleys to Jones family reunions and gatherings.

According to Alice, Bobby always contributed to the support and maintenance of the Eleys until they reached adulthood. Bobby named the Eleys as beneficiaries of life insurance policies, a certificate of deposit, and bonds. Most significantly, Bobby completed and signed an insurance beneficiary designation form on which he stated that Nathan Eley was his son and Sheila Eley was his daughter.

The co-administrators also assert that the evidence is insufficient to prove paternity because Alice never testified that she had had sexual intercourse with Bobby. We are unpersuaded by this assertion. Alice did testify that she and Bobby began "dating" in August 1957, that they dated continuously thereafter, and that Bobby was the Eleys' father.

6

Finally, the co-administrators contend that the evidence should fail because, on one occasion, Alice unsuccessfully petitioned a juvenile and domestic relations district court to order Bobby to pay support for the Eleys. To support this contention, the co-administrators look to Code § 64.1-5.1(3)(b) which states that a person born out of wedlock is the child of a man if the paternity is established by clear and convincing evidence; "provided, however, that the paternity establishment . . . shall be ineffective to qualify the father or his kindred to inherit from or through the child unless the father has openly treated the child as his and has not refused to support the child." The co-administrators assert that "it is apparent that Bobby Jones was refusing to support the children when he went to court and the child support case was dismissed." We do not agree.

The record is silent with respect to the basis for the dismissal of the petition. Alice testified, however, that, although Bobby always supported the Eleys, she "took him to court . . . to get more money because [she] didn't feel that [Bobby] was giving [her] enough at that particular time." Viewing, as we must, the evidence and all reasonable inferences in the light most favorable to the Eleys, we do not think the record supports the contention that Bobby ever refused to support them.

7

Moreover, we think the co-administrators' reliance upon the quoted clause in Code § 64.1-5.1(3)(b) is misplaced. The clause deals with the right of a father or his kindred to inherit from or through a child born out of wedlock, not with the establishment of paternity.

IV

We recognize, as the co-administrators state, that the General Assembly, in enacting Code § 64.1-5.1, has placed a heavy burden on people who undertake to prove that they are the paternal children of a decedent. It is apparent from the record, however, that the trial court was fully cognizant of that burden. Nevertheless, the court found by clear and convincing evidence that Bobby Jones was the Eleys' biological father. Giving that finding the deference to which it is entitled, we conclude that the finding is fully supported by the evidence. Accordingly, the trial court's judgment will be affirmed.[4]

Affirmed.

JUSTICE KOONTZ, with whom JUSTICE COMPTON and JUSTICE KINSER join, dissenting.

I respectfully dissent. The majority acknowledges that the General Assembly has placed a heavy burden on people who

---

[4] We have considered the co-administrators' other assignment of error and find it to be without merit.

undertake to prove that a decedent is their biological father. This burden of proof is appropriate because obviously a decedent no longer can speak in defense of the asserted paternity. Here, in my view, Sheila A. Eley and Nathan A. Eley have failed to establish by clear and convincing evidence, which was their burden under Code § 64.1-5.1, that Bobby Julius Jones, deceased, was their biological father.

Code § 64.1-5.2, although permitting other evidence, provides statutory evidentiary factors sufficient to establish that a man is the biological father of children born out of wedlock. In the present case, none of these factors was proved. Thus, there is no evidence that Bobby openly cohabited with the Eleys' mother, Alice Eley, during the ten months immediately prior to Sheila's birth in 1958 or during the ten months immediately prior to Nathan's birth in 1960; that Bobby consented that his name be used as the father upon the Eleys' birth certificates; that Bobby allowed the use of his surname by the Eleys; that Bobby claimed the Eleys as his children on any statement, tax return, or other document filed with a government; that Bobby admitted before any court that he was the Eleys' father; that Bobby admitted paternity in writing, under oath; or that any genetic blood grouping test or other medical evidence established paternity.

In addition, the record reflects that on one occasion during Bobby's lifetime and the Eleys' minority, Alice unsuccessfully petitioned a juvenile and domestic relations district court to order him to pay support for the Eleys. Although the record is silent with respect to the basis for the dismissal of this petition, it nevertheless establishes that on that occasion Alice was not successful in proving that Bobby was the Eleys' biological father.

It is in this context that we must consider whether the other evidence, relied upon by the trial court and the majority, rises to the level of clear and convincing evidence of the asserted paternity. The Eleys' evidence establishes that they were the objects of Bobby's affection and his financial support and that in many ways Bobby's conduct toward the Eleys was consistent with a relationship between a father and his children. The existence of that relationship is further supported by Bobby's cohabitation with the Eleys' mother during the seven years preceding his death and the financial benefits he provided for the Eleys at the time of his death. However, when this evidence is considered against the failure of the Eleys' to prove any one of the express statutory factors to support a finding of paternity under Code § 64.1-5.2, coupled with the evidence that Alice was not successful in proving that paternity in the juvenile and domestic relations district court

proceeding during Bobby's lifetime, it falls short of the required clear and convincing standard of proof.  See Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975).

For these reasons, I would reverse the judgment of the trial court and enter final judgment for the co-administrators of Bobby's estate.