## CIRCUIT COURT OF FAIRFAX COUNTY

Margaret A. H. Williams

v.

Arthur Harris

August 19, 2002

Case No. (Chancery) 176158

BY JUDGE KATHLEEN H. MACKAY

This matter comes before the court upon the Bill of Complaint of Margaret Williams for appointment as Administrator of the Estate of Peggie Maxine Hurt ("decedent"). Complainant also requests that the Court find that Arthur Harris, Respondent, is not an heir at law of the decedent. The hearing in this case was held on May 6, 2002, after which the Court took the matter under advisement. For the reasons stated more fully below, the Court finds that the Respondent is the decedent's biological father and therefore denies Complainant's petition to be appointed administrator of decedent's estate.

*Facts*

The decedent died intestate on September 11, 2001, at the age of 36. She was a victim of the terrorist attack upon the Pentagon, where she worked for the Department of Defense. The decedent was predeceased by her mother and maternal grandmother. Decedent had no spouse, children or maternal siblings. The decedent was survived by her maternal grandfather; however, he died on September 24, 2001.

Decedent's mother and maternal family raised her from birth. Growing up, the decedent lived in the home with her maternal grandparents, her mother, and the Complainant. Decedent's birth certificate did not list a father, and decedent used her mother's surname her entire life.

There was little to no evidence that the Respondent supported the decedent during her childhood. In fact, the evidence was that the decedent had little contact with the Respondent as a child.

### Legal Principles

The issue in this case is whether Arthur Harris is the biological father of the decedent and, as such, entitled to be the administrator of her estate as the intestate's sole distributee. Va. Code § 64.1-118. Given the facts surrounding the decedent's tragic death, the Court presumes that the estate of the decedent will be sizeable.

There is an interplay in the Code between two provisions that relate to paternity. Va. Code § 64.1-5.2 sets out eight factors that may be used by a court to determine paternity. Evidence of paternity must be clear and convincing. Va. Code § 64.1-5.1 defines under what circumstance a relationship of parent and child will determine succession from a person. Not only must paternity be established but paternity, even if established, "shall be ineffective to qualify the father or his kindred to inherit from or through the child unless the father has openly treated the child as his and has not refused to support the child." Va. Code § 64.1-5.1(3)(b).

Unfortunately, there are no cases, which construe these statutory provisions in the context of the facts presented in the instant case. Generally, it is the child, not the parent, who attempts to use these particular statutes to establish paternity. See e.g., *Jones v. Eley*, 256 Va. 198, 501 S.E.2d 405 (1998); *Veeney on Behalf of Strother v. Sullivan*, 973 F.2d 326 (4th Cir. 1992); *Johnson v. Branson*, 228 Va. 65, 319 S.E.2d 735 (1984). Proving paternity in Virginia is essentially a three-step process. First, a man must prove his paternity; that is, he must establish that he is the biological father of the child. Second, he must prove that he openly treated the child as his. And, third he must show that he did not refuse to support the child. Mr. Harris has met the burden on each element. I will address each one in turn.

A. *Paternity; Va. Code § 64.1-5.2*

This section of the code sets out eight factors that may be used by a court to decide paternity. Evidence as to paternity is not limited to these factors.

The evidence presented at the hearing was that it was widely accepted by both the Hurt and Harris families that Arthur Harris was the biological father of Peggie Hurt. The Respondent presented pictures taken of decedent when she was a child, upon which Mary Hurt (decedent's mother) had written sentiments such as, "Love to Daddy" and "Father Arthur" on the back. Respondent's Ex. A. Respondent claims Mary Hurt sent these pictures to him after he moved to New York. Christine Wilson, the decedent's aunt, testified not that the Respondent never visited but that he did so rarely, one to three times in six years. Members of both the Harris and Hurt families were familiar with each other. Respondent's Ex. I.

In addition, the Respondent argues that he can establish paternity pursuant to Va. Code § 64.1-5.2(4) and (6). Those sections require, "4. that he claimed the child as his child on any statement, tax return, or other document filed and signed by him with any local, state, or federal government or any agency thereof. . . . and 6. that he voluntarily admitted paternity in writing, under oath." *Id.* Respondent listed the decedent as his daughter and designated her a beneficiary on an enrollment form he submitted to the Virginia Retirement System in July of 1998 and May of 1999. Respondent contends that this form satisfies the requirements of the above quoted subsections. Respondent's Ex. P and Q. The fact that the decedent was an adult when he acknowledged her would seem to make no difference as to whether he has fallen within the statute.

Finally, regarding paternity, the Respondent has presented evidence that the decedent believed he was her biological father. Respondent testified that the decedent contacted him in 2000 to confirm that she had his correct personal information, in order to list him (as her father) on her security clearance forms for the Pentagon. In addition, the Complainant presented testimony of a half-dozen witnesses that had had conversations with decedent through the years regarding the fact that Arthur Harris was her father, but had not supported her or maintained their relationship. It is clear to the Court that respondent is decedent's biological father.

B. *Openly Treated the Child as His; Va. Code § 64.1-5.1(3)(b)*

The Respondent and decedent never shared a typical father-daughter relationship while the decedent was a minor. In fact, the testimony given at trial was that Respondent was not present at decedent's birth. He also did not live in the same home or, for the most part, the same state as decedent while she was growing up. The decedent did not call Respondent by any name other than Arthur; the Respondent did not attend decedent's baptism or her band recitals or softball games. Respondent was not present at decedent's high school graduation. While the Respondent claims he gave monetary support to Mary Hurt for the decedent, it was sporadic and minimal at best.

The Respondent did attend decedent's college graduation. There was also evidence that he purchased a car for her as a graduation gift. Respondent's Ex. I. Apparently, however, decedent did not like the car and asked the Respondent to sell it. He claims he did so and gave the proceeds to the decedent. There was no evidence to support that fact, however.

The most significant way in which Respondent openly treated the decedent as his child was by naming her as his daughter on his insurance beneficiary designation and enrollment forms back in 1978, both medical and life insurance. Respondent's Ex. B and C. The decedent was thirteen years of age at the time. The decedent's name was listed along with Respondent's other children. The decedent used the dental benefits at one time during her childhood. She used the benefits at least twice while she was in college. Respondent's Ex. D, E, and F.

In addition, decedent was Respondent's primary beneficiary on his 401(k) plan and Prudential Investment Plan when he was an employee at Prudential Insurance. Respondent's Ex. H. The decedent also applied for life insurance on herself and listed the Respondent as her father and primary beneficiary. Respondent's Ex. G.

At the time of the death of the decedent's mother, the Respondent took the decedent along with several family members on a trip to the Bahamas. Respondent's Ex. J. At least as an adult, the decedent was well know to her father's family. Respondent's Ex. O. These various actions by the Respondent support the court's finding that he openly treated the decedent as his child.

## C. *Did Not Refuse to Support; Va. Code § 64.1-5.1(3)(b)*

There was no evidence presented at the hearing to support a finding that Respondent ever refused to support the decedent. There was no evidence that Mary Hurt ever petitioned a court to require that Respondent pay child support. Respondent testified that he never petitioned a court for visitation or a determination regarding his paternity.

While the Court could construe Respondent's inactivity as a father as a refusal to support the decedent, such a construction would supplant the applicable statutory provision. It would seem that the only way a court can find that a father refused to support is if he was ever actually asked to support the child and said no.

Furthermore, the statute does not seem to give the Court leeway to make a qualitative determination in this case. For example, in the instant case, I find that Respondent openly held the decedent out as his child and did not refuse to support her. However, I also find that he was inconsistent and unreliable in acting as a father to the decedent when she was a child.

### *The Decision*

In sum, it is my decision that the Respondent, Arthur Harris, is the father of the decedent, Peggie Hurt. As such, and for all the reasons stated above, he has the right to act as an administrator of his daughter's estate and to take as the sole distributee of her estate.

This is not a particularly happy decision for me to make. The evidence presented in the case is overwhelming that Peggie was raised by her mother in the supportive company of her grandparents and maternal aunts, particularly Margaret Williams. There is no question that Peggie loved these relatives and, had she made out a will, I imagine that they would have been the primary beneficiaries.

Having said that, I believe, if my decision does not appear to be fair, it is correct legally. The Respondent has presented clear and convincing evidence that he is the father of the decedent. He has openly treated the decedent as his and has not refused to support his daughter.