Present:  All the Justices

ANNA LEE HORTON

v.  Record No. 961176    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                    June 6, 1997
HOWARD P. HORTON

FROM THE CIRCUIT COURT OF CLARKE COUNTY
James L. Berry, Judge

In this appeal, we consider whether a plaintiff's breach of contract was material, barring her recovery for the defendant's nonperformance of the contract.

Anna Lee Horton and Howard P. Horton were married in July 1984, and executed a contract in July 1991 (the 1991 contract). Mrs. Horton filed a motion for judgment against Mr. Horton in 1995, seeking damages for his failure to comply with the 1991 contract.  Mr. Horton filed a counterclaim, alleging damages resulting from Mrs. Horton's breach of contract.

The trial court heard the following evidence in a three-day bench trial.  In May 1989, Mr. Horton entered into a joint venture agreement with Charles and Elaine Longerbeam for the development and sale of lots in "Carlisle Heights," a subdivision in Frederick County.  Mrs. Horton was not a partner in the joint venture.

The Longerbeams decided to terminate their joint venture with Mr. Horton due to the Hortons' marital difficulties.  In January 1991, a dissolution agreement was drafted which provided that the Longerbeams and Mr. Horton would each take sole title to one-half the lots in Carlisle Heights.  The Longerbeams were advised by counsel to obtain Mrs. Horton's signature on the

agreement for reasons unrelated to this case. Mrs. Horton's refusal to sign the document postponed execution of the agreement until May 1991, when Mr. Horton and the Longerbeams signed the document. Mrs. Horton did not sign the agreement with the other three parties at that time.

On July 10, 1991, Mr. and Mrs. Horton executed the 1991 contract. This contract required Mrs. Horton to sign the joint venture dissolution agreement, and to execute a power of attorney appointing M. Tyson Gilpin, Jr., her attorney, to sign certain documents on her behalf, including the deeds to the Longerbeams and deeds to complete the sale of other lots.

The 1991 contract provided that the net proceeds from an anticipated sale of eleven lots, as well as from the future sale of other lots, would be deposited into an escrow account, from which the escrow agents would make payments due Mrs. Horton under the contract. Pursuant to the contract, Mr. Horton was obligated, to the extent he was financially able to do so, to supplement the escrow account if its assets were not sufficient to meet the periodic payments due Mrs. Horton.

Mrs. Horton signed the joint venture dissolution agreement on July 17, 1991, but she did not execute the power of attorney despite Mr. Horton's repeated requests. However, Mrs. Horton signed several "form" deeds and left them with Gilpin. When Mr. Horton sold a lot in Carlisle Heights, the settlement attorney notified Gilpin, who entered the legal description of the lot on

the signed deed and delivered the deed to the settlement attorney. Before each settlement, Mr. Horton requested that Mrs. Horton sign the power of attorney required by the 1991 contract.

In 1993, Mrs. Horton stopped signing the "form" deeds and began attending the real estate settlements. At the settlements, Mrs. Horton examined the documents and questioned the propriety of various provisions if they did not correspond to her interpretation of the 1991 contract.

Edwin B. Yost, an attorney who conducted the settlements on Mr. Horton's lots in Carlisle Heights, testified that Mrs. Horton's involvement in the settlement proceedings delayed the original settlement date for several of the lots because the parties were forced to wait for her signature. Yost also stated that, based on these delays, his clients began purchasing lots from the Longerbeams, even though the clients initially had conducted business with Mr. Horton. At that time, Mr. Horton was attempting to sell his lots for at least $2,000 less than the price of the Longerbeams' lots.

Mr. Horton supplemented the escrow account from his personal funds for three months in 1991, for four months in 1992, and for two months in 1993. However, beginning in May 1993, Mr. Horton refused to make any further supplemental payments to the account even though the account continued to have insufficient funds to pay all the expenses required by the 1991 contract. Mr. Horton did not further supplement the account. Mrs. Horton then filed

this motion for judgment against Mr. Horton, alleging that he materially breached the 1991 contract by failing to supplement the escrow account.

Mr. Horton filed a counterclaim, alleging that Mrs. Horton had breached the agreement by failing to sign the power of attorney, and by intentionally interfering with the lot sales. He alleged that her conduct resulted in a substantial loss of sales and profits.

The trial court concluded that Mrs. Horton's "attendance at the closings and failure to sign the deeds promptly caused Mr. Yost's clients to begin buying Longerbeam lots in preference to the less expensive Horton lots." The trial court entered judgment for Mr. Horton on the motion for judgment, ruling that although Mrs. Horton's failure to sign the joint venture dissolution agreement before July 1991 could not be considered a breach of the 1991 contract since it was not yet in existence, her failure to sign the power of attorney required by the 1991 contract constituted a material breach of that contract. The trial court did not rule on Mr. Horton's counterclaim.

On appeal, Mrs. Horton contends that her failure to sign the power of attorney was not a material breach of the 1991 contract because she fulfilled the purpose of that requirement by signing the "form" deeds. She further asserts that there is no evidence that her attendance at the settlements or her delay in signing any deeds resulted in the loss of lot sales. Mrs. Horton

contends that by proceeding with the sale of the lots, Mr. Horton accepted her substituted performance of signing "form" deeds, and that this acceptance relieved her of the obligation to sign the power of attorney. Finally, Mrs. Horton argues that even if she did breach the contract, the trial court erred in relieving Mr. Horton of his own obligations under the contract and in failing to award both parties their respective damages.

In response, Mr. Horton asserts that there was sufficient evidence for the trial court to conclude that Mrs. Horton's failure to sign the power of attorney was a material breach of the 1991 contract. Mr. Horton argues that the purpose of that contract was to facilitate lot sales and to avoid Mrs. Horton's interference in the settlement proceedings. He contends that the evidence showed that Mrs. Horton defeated this purpose by delaying the settlements to such an extent that potential purchasers ceased doing business with him, and bought similar, but more expensive, lots from the Longerbeams. We agree with Mr. Horton.

On appeal, we review the evidence in the light most favorable to Mr. Horton, the prevailing party at trial. Tuomala v. Regent University, 252 Va. 368, 375, 477 S.E.2d 501, 505 (1996); W.S. Carnes, Inc. v. Chesterfield County, 252 Va. 377, 385, 478 S.E.2d 295, 301 (1996). Since the trial court heard the evidence ore tenus, its findings based on an evaluation of the testimony have the same weight as a jury verdict. Tuomala, 252

Va. at 375, 477 S.E.2d at 505-06; RF&P Corporation v. Little, 247 Va. 309, 319, 440 S.E.2d 908, 915 (1994). Under Code § 8.01-680, we will uphold the trial court's judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it. Tuomala, 252 Va. at 375, 477 Va. at 506; W.S. Carnes, Inc., 252 Va. at 385, 478 S.E.2d at 301.

Generally, a party who commits the first breach of a contract is not entitled to enforce the contract. Federal Insurance Co. v. Starr Electric Co., 242 Va. 459, 468, 410 S.E.2d 684, 689 (1991); Hurley v. Bennett, 163 Va. 241, 253, 176 S.E. 171, 175 (1934). An exception to this rule arises when the breach did not go to the "root of the contract" but only to a minor part of the consideration. Federal Insurance Co., 242 Va. at 468, 410 S.E.2d at 689; Neely v. White, 177 Va. 358, 366, 14 S.E.2d 337, 340 (1941).

If the first breaching party committed a material breach, however, that party cannot enforce the contract. See Neely, 177 Va. at 366-67, 14 S.E.2d at 341. A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract. See Ervin Construction Co. v. Van Orden, 874 P.2d 506, 510-11 (Idaho 1993); Cady v. Burton, 851 P.2d 1047, 1052 (Mont. 1993); Management Computer Services Inc. v. Hawkins, Ash, Baptie & Co., 557 N.W.2d 67, 77-78 (Wis. 1996). If the initial breach is material, the other party to the contract is

excused from performing his contractual obligations.  See Neely,
177 Va. at 367, 14 S.E.2d at 341; Bernstein v. Nemeyer, 570 A.2d
164, 168 (Conn. 1990); Eager v. Berke, 142 N.E.2d 36, 39 (Ill.
1957); Quintin Vespa Co. v. Construction Service Co., 179 N.E.2d
895, 899 (Mass. 1962); Gulf South Capital Corp. v. Brown, 183
So.2d 802, 804-805 (Miss. 1966); Management Computer Services,
Inc., 557 N.W.2d at 77.

Here, as consideration for the contract, Mrs. Horton was
required to sign two documents, the joint venture dissolution
agreement and the power of attorney.  The evidence showed that
the purpose of the power of attorney, and an essential purpose of
the contract itself, was to facilitate lot closings by ensuring
Mrs. Horton's cooperation in the settlement proceedings.  As Mr.
Horton and Yost testified, Mrs. Horton's refusal to sign the
power of attorney and her interference in the settlement
proceedings delayed lot closings and led to the loss of potential
lot sales.

We disagree with Mrs. Horton's argument that a material
breach was not proved since Mr. Horton failed to establish an
amount of damages actually incurred as a result of her conduct.
The type of evidence required to establish a material breach of
contract will vary depending on the facts surrounding a
particular contract.  See Restatement (Second) of Contracts § 241
cmt. a (1979).  In many cases, a material breach is proved by
establishing an amount of monetary damages flowing from the

breach.  See, e.g., Federal Insurance Co., 242 Va. at 468, 410 S.E.2d at 689.  However, proof of a specific amount of monetary damages is not required when the evidence establishes that the breach was so central to the parties' agreement that it defeated an essential purpose of the contract.  See, e.g., J.P. Stravens Planning Associates, Inc. v. City of Wallace, 928 P.2d 46, 49 (Idaho Ct. App. 1996); Rogers v. Relyea, 601 P.2d 37, 40-41 (Mont. 1979); Macon Mining & Manufacturing, Inc. v. Lasiter, 658 P.2d 505, 507 (Or. Ct. App. 1983).  As noted above, there was sufficient evidence to support the trial court's conclusion that Mrs. Horton's breach defeated an essential purpose of the contract.  Thus, Mr. Horton proved a material breach of contract which excused his nonperformance and prevented Mrs. Horton from enforcing the contract.[*]  See Neely, 177 Va. at 367, 14 S.E.2d at 341; Hurley, 163 Va. at 253, 176 S.E. at 175.

Mrs. Horton contends, however, that Mr. Horton accepted her performance of signing "form" deeds, and thus waived his right to assert her failure to sign the power of attorney as a defense to his nonperformance.  We disagree.

A party claiming waiver must show a "knowledge of the facts

_____

[*]We also disagree with Mrs. Horton's contention that the trial court ruled she breached the 1991 contract by failing to sign the joint venture dissolution agreement in May 1991. Although the trial court stated that Mrs. Horton's delay in signing the joint venture dissolution agreement "permitted the avoidance of the eleven lot transactions," whose sale was pending prior to the execution of the 1991 contract, the court did not rule that her conduct prior to the signing of the 1991 contract constituted a material breach of that contract.

basic to the exercise of the right [waived] and the intent to relinquish that right." Stuarts Draft Shopping Ctr. v. S-D Associates, 251 Va. 483, 489-90, 468 S.E.2d 885, 889 (1996) (citation omitted); Stanley's Cafeteria v. Abramson, 226 Va. 68, 74, 306 S.E.2d 870, 873 (1983). Acceptance of defective performance, without more, does not prove intent to relinquish the right to full performance. Id. at 74, 306 S.E.2d at 873; see 5 Samuel Williston & Walter H.E. Jaeger, A Treatise on the Law of Contracts § 700 (3d ed. 1961).

Here, the evidence affirmatively showed that Mr. Horton did not intend to relinquish his contractual right to secure a power of attorney from Mrs. Horton. As stated above, before each settlement, Mr. Horton requested that Mrs. Horton sign the power of attorney as required by the 1991 contract. These repeated requests establish that Mr. Horton did not waive his right to assert Mrs. Horton's failure to sign the power of attorney as an excuse for his nonperformance.

Finally, we find no merit in Mrs. Horton's argument that the trial court rescinded or nullified the contract when the court should have awarded Mr. Horton damages for any losses he sustained as a result of her breach. The trial court did not rescind or nullify the contract, but ruled that Mrs. Horton's material breach of the contract excused Mr. Horton's nonperformance. As Mrs. Horton's counsel acknowledged in oral argument before this Court, a party who has materially breached a

contract is not entitled to recover damages for the other party's subsequent nonperformance of the contract.

For these reasons, we will affirm the trial court's judgment.

<u>Affirmed</u>.