## CIRCUIT COURT OF THE CITY OF NORFOLK

Neil Daboul

v.

Board of Visitors
of the College of
William and Mary et al.

April 10, 2002

Case No. (Law) L00-2655

BY JUDGE EVERETT A. MARTIN, JR.

The plaintiff has filed a motion for judgment seeking money damages from the defendants for their refusal to award him a Masters Degree in Business Administration. He alleges three bases of the defendants' liability: breach of contract, wrongful interference with contract, and a violation of his civil rights under 42 U.S.C. § 1983. The defendants have filed a demurrer and pleas of sovereign and qualified immunity. The demurrer and pleas are sustained.

### Breach of Contract

I sustain the demurrer as it is self-evident that the law of contracts does not apply to a college's evaluation of a student's academic performance. No citations should be necessary, but see *Mahavongsanan v. Hall*, 529 F.2d 448 (5th Cir. 1976); *University of Mississippi Medical Center v. Hughes*, 765 So. 2d 528 (Miss. 2000). Even if the law of contracts did apply, the plaintiff has pleaded himself out of court.

He appears to allege the terms of his "contract" are set out in the student handbook. (Plaintiff's Memorandum in Opposition to Demurrer, pp. 2-3; Motion for Judgment, paragraph 6.e.) The handbook provides that a student will be dismissed from the program if he "receives one grade of F." (Motion for Judgment, Exhibit C2, "Grading Policies and Academic Standards.") The plaintiff admits he received a grade of F in one subject and was dismissed. (Motion for Judgment, paragraph 6.d, Exhibits C1 and C3.)

The plaintiff appealed his dismissal to the Graduate Academic Status Committee, and he was reinstated. That committee required that he complete additional courses with a grade of at least B in each course. The plaintiff agreed to this condition in writing. (Motion for Judgment, paragraph 6.d, Exhibit C4.) He did not earn a grade of B in the required courses. (Motion for Judgment, paragraph 6.f, Exhibit C5.)

The plaintiff claims the committee had no authority to impose additional requirements upon him for reinstatement. I disagree. First, the legal authorities are to the contrary. *Mahavongsanan*, 529 F.2d at 450; *Hughes*, 765 So. 2d at 534. Second, the plaintiff agreed in writing to the additional requirements. It is hornbook law that a written contract may be amended by a subsequent written contract.

Finally, if there had been a contract, here, the plaintiff's failure to complete the academic requirements constituted a material breach. The party committing the first material breach of a contract is not entitled to enforce it, and the other party is excused from performance. *Horton v. Horton*, 254 Va. 111, 487 S.E.2d 200 (1997).

I also sustain the demurrer and plea of sovereign immunity to this claim as it is apparent the procedures required by Code of Virginia §§ 8.01-192, 8.01-193 have not been followed.

## Wrongful Interference with Contract

As the plaintiff has pleaded the defendants' use of "improper methods" (Motion for Judgment, paragraph 9.b), I understand this to be a cause of action for tortious interference with a contract terminable at will. See *Duggin v. Adams*, 234 Va. 221, 360 S.E.2d 832 (1987). As I concluded above, the law of contracts does not apply, and, if it did, the plaintiff agreed to the amendment of the "contract" and committed the first material breach. The demurrer to this cause of action is sustained.

## 42 U.S.C. § 1983

The individual defendants have qualified immunity under 42 U.S.C. § 1983. In *Wood v. Strickland*, 420 U.S. 308, 43 L. Ed. 2d 214, 95 S. Ct. 992 (1975), the Court held school board members have qualified immunity from a suit for damages for their actions taken to maintain school discipline. In *Butz v. Economou*, 438 U.S. 478, 57 L. Ed. 2d 895, 98 S. Ct. 2894 (1978), the Court held that state and federal officials exercising discretion were generally entitled to qualified immunity from suit under the statute. In *Harlow v. Fitzgerald*, 457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982), the Court broadened the protection afforded by qualified immunity by removing the subjective element of the defense that had theretofore allowed many § 1983 actions against public officials to go to trial, stating:

> government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818.

The clearly established right must be fairly specific. In *Anderson v. Creighton*, 483 U.S. 635, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987), the Court rejected the claim that an alleged violation of the Due Process Clause could abrogate qualified immunity:

> The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. ... It should not be surprising, therefore,

that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

483 U.S. at 639-40.

The Supreme Court has also made it abundantly clear that a defendant's entitlement to the defense should be determined early in the course of the action:

Insubstantial lawsuits can be quickly terminated by federal courts alert to the possibilities of artful pleading. Unless the complaint states a compensable claim for relief under the Federal Constitution, it should not survive a motion to dismiss.

*Butz v. Economou*, 438 U.S. at 507-08. "Until this threshold immunity question is resolved, discovery should not be allowed." *Harlow v. Fitzgerald*, 457 U.S. at 818.

The *Harlow* Court refashioned the qualified immunity doctrine in such a way as to "permit the resolution of many insubstantial claims on summary judgment" and to avoid "[subjecting] government officials either to the costs of trial or to the burdens of broad-reaching discovery" in cases where the legal norms the officials are alleged to have violated were not clearly established at the time. [457 U.S. at 817-18.] Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. ... The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.

*Mitchell v. Forsyth*, 472 U.S. 511, 526, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985).

There is no clearly established statutory or constitutional right to be unconditionally reinstated to a graduate degree program or to receive an M.B.A. when one twice fails to meet the requirements. What then Justice

Rehnquist wrote regarding a "substantive due process" claim against a medical school applies as well to all of the plaintiff's claims under § 1983. "Courts are particularly ill-equipped to evaluate academic performance." *Board of Curators v. Horowitz*, 435 U.S. 78, 92, 55 L. Ed. 2d 124, 98 S. Ct. 948 (1978). The plea of qualified immunity of the individual defendants is sustained.

The Graduate Academic Status Committee is immune from this claim as it is not a "person" under the statute. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989). It would also appear that the individual defendants were sued in their official capacities and would thus be immune from a suit for damages, *Will, supra,* at 71, but, as this issue has not been raised, I shall not address it.

With respect to the plaintiff's claimed denial of substantive due process, in a quite similar case, the Supreme Court of the United States assumed without deciding that courts may review academic decisions under a "substantive due process standard," and it held:

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

*Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 225, 88 L. Ed. 2d 523, 106 S. Ct. 507 (1985). The plaintiff's own motion for judgment shows the exercise of considerable professional judgment. The demurrer to the claim for a violation of substantive due process is also sustained.

I find it is unnecessary to address the other defensive grounds asserted.