## CIRCUIT COURT OF WARREN COUNTY

Steven D. Llewellyn et al.

v.

Joel L. Moyer

May 30, 2002

Case No. (Chancery) 01-230

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on May 20, 2002, on the parties' cross-motions for summary judgment. Stephen L. Pettler, Jr., Esquire, appeared for the Plaintiffs; and Eric F. Schell, Esquire, appeared for the Defendant. Upon consideration, the Court has decided to grant the Defendant's Motion for Summary Judgment.

### I. *Statement of Material Facts*

The following material facts are not in dispute.

The parties entered a written contract dated November 24, 2000, which they called a "Letter Agreement," whereby the Defendant agreed to sell the Plaintiffs numerous parcels of real property which he owned in Warren County, Virginia. The contract had two phases. First, the Plaintiffs could purchase 58 lots from the Defendant, and then after that closing, they could purchase two additional parcels totaling 70.81 acres.

Before closing on the first phase, which was the sale of the 58 lots, by Letter Agreement dated January 25, 2001, the parties modified the terms of the sale of the 58 lots to provide that the Plaintiffs would pay part of the purchase price of $195,000 by executing a note in the amount of $35,000 payable to the Defendant, which was secured by a second deed of trust. The January 25, 2001, modification agreement provided, in pertinent part, that:

The terms of the "SECOND MORTGAGE" shall be:
 1. The note shall bear interest at 12%. . . .
 3. The full amount of the note shall be due and payable at the end of six months.
 All other provisions of the contract remain unchanged.

The contract referred to is the November 24, 2000, Letter Agreement.

On January 31, 2001, the parties closed on the sale of the 58 lots. Pursuant to the January 25, 2001, modification agreement, the Plaintiffs executed a $35,000 note made by their company, Llewellyn General Contracting, Inc., which they personally guaranteed and which the Defendant accepted as complying with the modified terms of sale. The note was payable in full on July 1, 2001; however, neither the note nor the deed of trust make any express reference to the November 24, 2000, Letter Agreement, and neither of those documents stated that a default under the note was a default under the Letter Agreement.

After the January 31, 2001, closing on the sale of the 58 lots, the Plaintiffs could exercise the option to purchase the remaining 70.81 acres pursuant to the terms of the November 24, 2000, Letter Agreement, which provided in pertinent part:

> B. After closing of paragraph A (the sale of the 58 lots) I will sell to you Parcels 27-8B and 27-8C, consisting of 70.81 acres of land for the sum of ONE HUNDRED THOUSAND ($100,000) dollars to be paid in full on or before January 31, 2002. . . .
> D. If the above sections are not complied with, then Joel Moyer has the right to sell any or all of the remaining land to any other party at any price he elects.

On July 26, 2001, the Defendant received a $11,013.70 payment on the $35,000 note.

On August 23, 2001, the Plaintiffs made another payment of $13,282.00 on the $35,000 note.

On September 25, 2001, the Defendant sent the Plaintiffs a default letter for their failure to pay the $35,000 note in full on July 31, 2001, as specified in both the note and the January 25, 2001, modification to the Letter Agreement, and this letter stated, in pertinent part:

> PLEASE BE ADVISED that you are in default of the Letter Agreement dated November 24, 2000 ("Letter Agreement") and the

Addendum thereto dated January 25, 2000 ("Addendum") for your failure to pay as and when due the second mortgage as defined in the Addendum.

PLEASE TAKE FURTHER NOTICE that pursuant to paragraph B of the Letter Agreement, your option to purchase parcels 27-8B and 27-8C consisting of 70.81 acres of land is hereby terminated.

PLEASE TAKE FURTHER NOTICE that pursuant to paragraph D of the Letter Agreement, Mr. Moyer from this day forward shall have no further obligation to sell the land described in paragraph B of the Letter Agreement to you. Mr. Moyer will, at his discretion, sell any or all of that land to any other party at any price which he elects pursuant to the Letter Agreement.

The Plaintiffs responded to the Defendant's September 25, 2001, default letter by demanding on October 2, 2001, that the Defendant close on the remaining 70.81 acres pursuant to the Letter Agreement, and by paying on October 19, 2001, $13,232.96, which was the balance due on the $35,000 note.

The Defendant responded by maintaining that the Plaintiffs' option to purchase the 70.81 acres had been terminated, and, in 2002, he entered into a contract with a third party to sell the 70.81 acres for $160,000.

## II. *Conclusions of Law*

Both parties maintain that their option contract is clear and unambiguous, and the Court agrees. As the Supreme Court recently stated in *Pocahontas Mining, L.L.C. v. Jewell Ridge Coal Corp.*, 263 Va. 169, 173, 556 S.E.2d 769 (2002):

"It is well established that, when the terms of a contract are clear and unambiguous, a court must give them their plain meaning. *American Spirit Ins. Co. v. Owens*, 261 Va. 270, 275, 541 S.E.2d 553, 555 (2001); *Bridgestone/Firestone v. Prince William Square*, 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995). A contract is not ambiguous simply because the parties to the contract disagree about the meaning of its language. *Dominion Savings Bank v. Costello*, 257 Va. 413, 416, 512 S.E.2d 564, 566 (1999). Rather, ambiguity arises when its language can be understood in more than one way or refers to two or more things at once. *Westmoreland-LG&E Partners v. Virginia Power*, 254 Va. 1, 11, 486 S.E.2d 289, 294 (1997); *Doswell, Ltd. Partnership v. Virginia Power*, 251 Va. 215, 222, 468 S.E.2d 84, 88

(1996). When determining a contract's plain meaning, the words used are given their usual, ordinary, and popular meaning. *D. C. McClain, Inc. v. Arlington County*, 249 Va. 131, 135, 452 S.E.2d 659, 662 (1995).

In *Graphic Arts Mutual Ins. Co. v. C. W. Warthen Co.*, 240 Va. 457, 460, 397 S.E.2d 876 (1990), quoting *Magann Corp. v. Electrical Works*, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962), the Supreme Court stated:

> It is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.

"A corollary to the last stated principle [plain meaning rule] is that courts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein." *Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396 (1984). "The court will not write a new contract for the parties even when, in light of the facts known to them, the court might think they should have adopted different language." *Lerner v. Gudelsky Co.*, 230 Va. 124, 132, 334 S.E.2d 579 (1985). The parties' contract becomes the law of the case unless it is repugnant to some rule of law or public policy. *Mercer v. South Atlantic Ins. Co.*, 111 Va. 699, 704, 69 S.E. 961, 962 (1911).

In this case the Seller crafted a two phased option contract, and the parties are bound by the clear language which he used.

In *Beck v. Smith*, 260 Va. 452, 455, 538 S.E.2d 312 (2000), the Supreme Court noted that:

> Under the doctrine of merger, provisions in a contract for sale are extinguished and merged into the deed, an instrument of higher dignity. However, provisions which are collateral to the passage of title and not covered by the deed are not merged into the deed and survive its execution.

(Cites omitted.)

In real estate transactions, there are frequently collateral agreements. See 12B M.J., *Merger*, § 2; and *Miller v. Reynolds*, 216 Va. 852, 223 S.E.2d 883 (1979) (contract and deed provisions). "The court must give effect to all of the language of a contract if its parts can be read together without conflict. Where possible, meaning must be given to every clause. The contract must be read as a single document." *Miller v. SEVAMP, Inc.*, 234 Va. 462, 466-67 362 S.E.2d at 917-18 (1987). The payment terms of the note and second mortgage set forth in the January 25, 2001, modification agreement are collateral to the passage of the title to the lots, and they survived the closing on the lots and remained part of the parties' option contract.

In this case, the Defendant relies heavily on *Countryside Orthopedics v. Peyton*, 261 Va. 142, 151-52, 541 S.E.2d 279 (2001), in which the Supreme Court held that four contracts executed incident to a physician's joining a group practice were all interrelated:

> "The first step in analyzing this issue is to determine whether the four agreements executed in June 1997 should be construed together as one instrument or contract. This Court has repeatedly stated that "where two papers are executed at the same time or contemporaneously between the same parties, in reference to the same subject matter, they must be regarded as parts of one transaction, and receive the same construction as if their several provisions were in one and the same instrument." *Oliver Refining Co. v. Portsmouth Cotton Oil Refining Corp.*, 109 Va. 513, 520, 64 S.E. 56, 59 (1909) (cites omitted); "Where a business transaction is based upon more than one document executed by the parties, the documents will be construed together to determine the intent of the parties; each document will be employed to ascertain the meaning intended to be expressed by the others." *Daugherty*, 238 Va. at 524, 385 S.E.2d at 574 (citing *American Realty Trust v. Chase Manhattan Bank*, 222 Va. 392, 403, 281 S.E.2d 825, 830 (1981)).

Dr. Peyton had not paid for his stock under his stock purchase agreement in a timely fashion, and the Supreme Court reversed the trial court and held that Peyton's failure to pay was a material breach of the agreements, viewed as one instrument, which precluded Dr. Peyton from enforcing his right to receive severance pay. In doing it stated:

> [W]e apply the principle that "generally, a party who commits the first breach of a contract is not entitled to enforce the contract."

*Horton v. Horton*, 254 Va. 111, 115, 487 S.E.2d 200, 203 (1997) (citing *Federal Ins. Co. v. Starr Elec. Co.*, 242 Va. 459, 468, 410 S.E.2d 684, 689 (1991); *Hurley v. Bennett*, 163 Va. 241, 253, 176 S.E. 171, 175 (1934)). There is, however, an exception to that general rule "when the breach did not go to the 'root of the contract' but only to a minor part of the consideration." *Horton*, 254 Va. at 115, 487 S.E.2d at 203 (quoting *Federal Ins.*, 242 Va. at 468, 410 S.E.2d at 689; *Neely v. White*, 177 Va. 358, 366, 14 S.E.2d 337, 340 (1941)). Nevertheless, when the first breaching party commits a material breach, that party cannot enforce the contract. *Horton*, 254 Va. at 115, 487 S.E.2d at 204. "A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Id.*

Upon construing the four agreements in the present case as "parts of one transaction," *Oliver Refining*, 109 Va. at 520, 64 S.E. at 59, we conclude that Dr. Peyton committed the first material breach when he failed to make his monthly payments for the purchase of stock in Countryside in accordance with the terms of the Stock Purchase Agreement. It is not disputed that Dr. Peyton did not bring his stock purchase payments current at the closing and waited until August before he made the lump-sum payment, which covered only the months of January through July. Nor is it disputed that he never made any other payments.

"We believe that Dr. Peyton's failure to make his stock purchase payments goes to the "root" of the transaction. The four agreements were executed in order to effect Dr. Peyton's purchase of 50 percent of the stock in Countryside and to structure the relationship between the three parties in light of the fact that he was now an equal shareholder rather than a mere employee. . . .

Thus, Dr. Peyton's failure to pay the consideration for his 50 shares of stock in Countryside defeated the essential purpose of the transaction consummated in July 1997 with the execution of the four agreements and was, therefore, a material breach as a matter of law. *See Horton*, 254 Va. at 115, 487 S.E.2d at 204. Accordingly, as the first party to commit a material breach, Dr. Peyton cannot enforce the contract provision regarding severance pay.

*Id.* at 154-55.

Although the $35,000 note and the accompanying deed of trust are separate and independent legal documents, they are part of and collateral to the January 25, 2001, modification agreement which expressly stated that the note was "due and payable at the end of six months"; moreover, the time for the note payment was also an express part of the parties' modified option contract. Paragraph D of the original Letter Agreement which provided that: "If the above sections are not complied with, then Joel Moyer has the right to sell any or all of the remaining land to any other party at any price which he elects." The "above sections" included the provision that the $35,000 note was "due and payable at the end of six months." The payment date was clearly stated in both the note and the modification agreement. When July 31, 2001, arrived and the Note was in default by over half of the principal, the Plaintiffs had materially breached the contract between the parties, and the Defendant seller then had the right to terminate the option to sell the 70.81 acres pursuant to paragraph D of the Letter Agreement, which he did by his September 25, 2001, default letter, at which time the plaintiffs were still in default under the note by over $13,000.00.

Like Dr. Peyton in *Countryside Orthopedics v. Peyton, supra,* the plaintiffs committed the first material breach of the option contract by not paying the note in full by July 31, 2001, so they are not entitled to enforce their option contract to purchase the 70.81 acres.

## III. Decision

Upon consideration whereof, it is adjudged and ordered that:

1. The Plaintiffs' Motion for Summary Judgment is denied;

2. The Defendant's Motion for Summary Judgment is granted;

3. This case is continued for such proceedings as are necessary to resolve the remaining issues raised in the Counterclaim.