## CIRCUIT COURT OF MONTGOMERY COUNTY

Thomas S. Mills

v.

Virginia Polytechnic Institute
and State University

March 18, 2004

BY JUDGE ROBERT M. D. TURK

This matter was tried before the court on October 1, 2003. It was initially set for a jury; however, it was eventually heard by the court pursuant to an agreement by the parties. The plaintiff, Thomas S. Mills, has sued the defendant, VPI&SU, for breach of contract concerning his termination of employment with the defendant. Specifically, the plaintiff claims that Virginia Tech violated the terms and conditions of the Virginia Tech Faculty Handbook when the plaintiff was reassigned from a work station in Roanoke, Virginia, to Blacksburg, Virginia.

Virginia Tech had employed the plaintiff as station manager for its radio station, WVTF. Virginia Tech acquired this station from Virginia Western Community College in 1982. Prior to that time, the plaintiff was employed at the radio station by Virginia Western Community College. He was responsible for budgeting, programming, and all of the supervisory functions that went along with operating WVTF.

Virginia Tech ultimately developed a Faculty Handbook that became part of each employee's employment agreement with Virginia Tech. The Faculty Handbook contained various provisions to govern both Virginia Tech and its employees. It also established faculty positions and administrative positions. Pursuant to the Faculty Handbook, Mr. Mills was classified in the administrative/professional faculty group. The Faculty Handbook was established by Virginia Tech without any input from any of its employees. According to Patricia Hyer, Associate Provost for Academic Affairs, the handbook was created "to provide a coherent, one-place document

surrounding faculty employment policies and general guidance around faculty employment."

On March 3, 2000, Virginia Tech initiated termination proceedings against the plaintiff for actions it claimed had taken place during his recent employment. A letter was sent to Mr. Mills, outlining Virginia Tech's reasons for this termination. On March 24, Mr. Mills retained the services of the law firm of Gentry, Locke, Rakes & Moore to represent him on this termination proceeding. On March 30, 2000, the termination proceeding was rescinded, and a reassignment was given to Mr. Mills from the radio station in Roanoke to the communications department at Virginia Tech located in Blacksburg, Virginia. Mr. Mills, through his attorneys, objected to this reassignment, claiming that it violated the terms and conditions of the Virginia Tech Faculty Handbook, specifically §§ 3.6 and 2.19. Mr. Mills did not report to any type of work at Virginia Tech from March 30, 2000, until he was terminated on May 2, 2000.

Section 3.6 of the Faculty Handbook states, "Reassignment which involves a geographic transfer of more than 35 miles shall be conducted in accordance with the geographical transfer policy (see Section 2.19)." Section 2.19 specifically states:

> Reassignment of a faculty member at the initiative of the university to a primary workstation located more than 35 miles from the current workstation is considered a geographical transfer.
>
> A department head may request the geographical transfer of a faculty member to implement a programmatic mission of the university. The affected faculty member shall be involved in planning for the transfer prior to the submission of a formal request for transfer.
>
> The request for geographical transfer shall be transmitted in writing to a second-level administrator for approval with accompanying documentation justifying the need for the transfer of the selected individual.
>
> The justification shall describe the university program and the position to which the faculty member is being transferred. This description shall list the unique skills and knowledge required to fulfill the program's mission.
>
> The alternatives for meeting the requirements shall be outlined, along with the reason for selecting the alternative of geographical transfer of the particular faculty member.

A faculty member must be notified in writing at least six months in advance of the geographical transfer.

The transferred faculty member shall be reimbursed for all allowable expenses as defined by the university and state policy.

A cost of living adjustment will be added to the faculty member's base salary during the period they are employed in a high-cost area as defined for classified employees in the Virginia Compensation Plan issued by the state personnel director.

Mr. Mills has sued Virginia Tech seeking damages for the wages he lost, retirement benefits he lost, the Cobra costs he incurred, and the loss of annual leave time, all as a result of the alleged wrongful termination. Mr. Mills argues that Virginia Tech violated the terms and conditions of his employment contract and, then, wrongfully terminated him when he attempted to exercise his rights under the contract by refusing the transfer. Virginia Tech argues that they did not wrongfully terminate the contract and, even if they did, any breach that Virginia Tech may have caused was not a material term of the contract. They argue that Mr. Mills's not returning to work was a material breach of the employment contract and, therefore, he is not entitled to recover anything from Virginia Tech in this action.

Based upon all of the evidence presented, the exhibits introduced, and the arguments forwarded to the court, I find in favor of the defendant, Virginia Polytechnic Institute and State University. Specifically, I find that the plaintiff has failed to prove that Virginia Tech violated the terms and conditions of the Faculty Handbook, and, even if there is proof of such violation, the violation in this case was not a material violation of the terms and conditions of the Faculty Handbook. Mr. Mills' refusal to report to work in Blacksburg was a material breach of any term and condition of his employment with Virginia Tech and, therefore, he breached his employment agreement with Virginia Tech, thereby precluding him from any recovery in this matter.

Both parties presented evidence concerning the "mileage" issue. Mr. Mills offered evidence that he traveled from Roanoke to Blacksburg on a number of occasions, as well as some of his employees, and each time he traveled to "Blacksburg," he would turn in a travel voucher indicating 48 miles one way. The vouchers were okayed by Mr. Hincker, and Mr. Mills was then reimbursed for the mileage expense. Mr. Mills testified as to the route he traveled, although he did say there was another route that could have been taken that was shorter than the 48 mile route; however, it just took a little longer. Mr. Mills did not state what that distance was in terms of mileage.

Virginia Tech presented evidence through Mr. Hincker that he had taken the "Ironto Road" route to Roanoke and measured the distance to be 34 miles. According to Mr. Hincker's testimony, that would have been within the 35-mile distance as listed in the Faculty Handbook. Mr. Hincker, as well as Mr. Mills, conceded that it was approximately 26 miles "as the crow flies." Based upon all the evidence, I find that Mr. Mills has not established by a preponderance of the evidence that a breach occurred concerning the 35-mile distance as contained in the Faculty Handbook.

Even assuming that the distance exceeded the 35 miles as contained in the Faculty Handbook, under the facts of this case, I would not find that to be a material breach of the terms and conditions of the Faculty Handbook.

"A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Horton v. Horton*, 254 Va. 111, 487 S.E.2d 200 (1997). In *Horton*, the court recited the Restatement of Contract, § 241, in stating "the type of evidence required to establish a material breach of contract will vary depending on the facts surrounding a particular contract." In citing the Second Restatement of Contract, the court stated that "In many cases, a material breach is provided by establishing an amount of monetary damages flowing from the breach. However, proof of a specific amount of monetary damage is not required when the evidence establishes that the breach was so central to the parties agreement that it defeated an essential purpose of the contract."

This case is somewhat different from any of the other cases cited by the parties in their briefs and from the decisions of the Supreme Court. In this particular case, the Faculty Handbook, on which Mr. Mills relies, was developed solely by Virginia Tech without any input from any of its employees. There was no evidence presented that this particular provision of the contract or any of the provisions as outlined in the Faculty Handbook were discussed with Mr. Mills at the time of his employment, or any of the provisions of the Faculty Handbook or essential provisions of his employment with Virginia Tech. In fact, Mr. Mills indicated that he never discussed the geographic transfer policy with personnel of Virginia Tech. In effect, there was no evidence presented that he was even aware of that provision until after the transfer from Roanoke to Blacksburg.

I concede, as set forth in the plaintiff's memorandum, when he cites the case of *Winn v. Aleda Constr. Co.*, 227 Va. 304, 315 S.E.2d 193 (1984), for the proposition that "it is well established Virginia law that each provision of a contract is presumed to have a purpose and each provision of a contract must be given meaning and effect; in other words, no provision of a contract is superfluous." I also agree with plaintiff in his memorandum when he

recites the purpose of §§ 3.6 and 2.19. He cites Patricia Hyer's testimony indicating that this geographic transfer section was created "as a result of an employee grievance, an employee was being transferred from Blacksburg to Northern Virginia, he felt unfairly, and following that grievance we were advised to try and develop a policy around that and that was where the policy was developed." (Transcript, p. 184.)

As stated earlier, in determining whether a breach of a contract is material, I have to find that "the breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Horton, supra.* Deciding whether or not a term of the contract is material should be decided on a case by case basis. Clearly, every term as contained in an employment contract would not be material.

In this case, it is clear that the purpose of the provision was to allow an employee to make decisions concerning his family situation, etc., due to the increased travel. There was no testimony, however, by the plaintiff in this case, that he was going to be affected in any manner as a result of exceeding the 35-mile limit. He did not indicate that it would inconvenience him so severely that he would have to make any changes in his family situation, such as uprooting them and moving them closer to his work station. It is clear from the testimony that the plaintiff had, in fact, traveled from the Roanoke station to Blacksburg on a number of occasions. In that instance, he would simply submit a travel voucher and be reimbursed for the additional mileage that he was required to put either on his vehicle or the state vehicle.

Also, there was no testimony by the plaintiff that the small amount of additional mileage, if I accept his 48 miles as being true, would make it impossible for him to show up in Blacksburg at his newly assigned workstation. Under all the facts and circumstances of this case, I simply cannot believe that any breach of such a small magnitude in this case would constitute a material breach. To say that this small mileage differential would constitute a material breach would require a finding that even a half-mile over the 35-mile limit would constitute a material breach of the employment contract. I just do not believe that is what Virginia law deals with in determining whether or not something is material to a contract. As indicated earlier, Mr. Mills was never consulted by Virginia Tech in determining the geographic transfer mileage limit. His input was never requested. While I will concede that the additional mileage may be an inconvenience to the plaintiff, there are other methods or means by which this minor breach could have been addressed, absent his refusal to accept the reassignment and simply not go to work. I find that refusing the assignment

256

and not showing up for work when requested is clearly the first material breach in this instance. Therefore, the plaintiff is precluded from recovering anything from Virginia Tech.