UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Chaney and Callins
Argued at Alexandria, Virginia

RAMESH ANNAMREDDY

MEMORANDUM OPINION* BY
v.        Record No. 1582-24-4         JUDGE MARY GRACE O'BRIEN
FEBRUARY 10, 2026

SRIDHAR NAGULAVANCHA, ET AL.

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
James P. Fisher, Judge

Collin Chayce Crookenden (Vanderpool, Frostick & Nishanian, P.C.,
on brief), for appellant.

James M. Stewart, Jr., for appellees.


Ramesh Annamreddy (appellant) appeals a judgment that he breached a contract to

purchase a company by failing to make a third and final payment to the sellers, Sridhar

Nagulavancha, Srinivas Veeramasu, and Anil Katikanani (collectively, appellees).  Appellant

argues that the court erred in not finding that appellees committed the first material breach by

failing to disclose the company's financial liabilities and by violating a non-compete agreement.

Appellant also contends that the court erred in not considering these breaches "when determining

[the company's] valuation" and by "arbitrarily disregarding" his own "unrebutted testimony"

that the company decreased in value after the sale.  This decrease in value, appellant argues,

should have triggered a contract provision permitting a downward adjustment to his final

payment, and the court erred in not applying that provision.  Finding no error, we affirm.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

In 2017, appellees jointly owned Concert Tech Corporation, an "information technology staff augmentation business" that provided "[s]oftware consulting [and] staffing service[s]." Appellant wanted to purchase Concert Tech and approached appellees with a letter of intent. After conducting a due-diligence review of the company's records, appellant submitted a revised letter of intent, and the parties negotiated a purchase price of $675,000.

On October 20, 2017, the parties executed a stock purchase agreement setting forth appellant's obligation to pay in three installments: $200,000 upon execution of the agreement; $250,000 due 10 days later; and $225,000 due within one year. Appellant signed a promissory note for the third payment, which allowed adjustments to the amount due if the company's "gross margin" increased or decreased during that year. Additionally, two of the appellees—Nagulavancha and Veeramasu—signed a "Non-Compete and Non-Solicitation Agreement," promising they would not "solicit, provide services to, or sell products to any [c]ustomer" that Concert Tech had serviced or sold to in the prior year. They also agreed not to solicit Concert Tech's employees or independently contracted staff members. This agreement was binding for two years.

Appellant made the first two payments. When he failed to make the third payment, appellees sued him for breach of contract. At a bench trial, appellant defended on the ground that appellees breached the contract first by failing to disclose financial liabilities as required by the stock purchase agreement. He introduced evidence showing that appellees had not provided a closing balance sheet until March 2018, well after the October 2017 closing date. This evidence included an email exchange wherein appellees acknowledged an "[e]xtra [l]iability" of approximately $17,000 that had "simply escaped our attention in our reviews."

Additionally, appellant contended that appellees committed the first material breach by violating the non-compete agreement. According to appellant, Nagulavancha breached by working for another company—U.S. Software and Consulting—that performed "exactly the same" services as Concert Tech. Nagulavancha had worked for this other company since 1999, and appellant "assumed" that he would stop after signing the non-compete agreement. Appellant offered no evidence that either Nagulavancha or his company solicited, provided services to, or sold products to anyone that had been a Concert Tech customer.

If not excused from liability based on these first material breaches, appellant also argued that the promissory note authorized a reduction in the amount due because of a decrease in Concert Tech's gross margin between 2017 and 2018. However, the court excluded appellant's exhibit purporting to show that the gross margin decreased by 55%. The court ruled that the exhibit was inadmissible under Virginia Rule of Evidence 2:1006 because it was a summary of financial information and appellant had not made the underlying data available to appellees, as required by the rule.[1] Appellees had "begged for the details many times, countless times," but appellant "never would share the details" of his claim that "there was a decrease in the gross margin of the company."

---

[1] Rule 2:1006 ("Summaries") provides as follows:

> The contents of voluminous writings that, although admissible, cannot conveniently be examined in court may be represented in the form of a chart, summary, or calculation. Reasonably in advance of the offer of such chart, summary, or calculation, the *originals or duplicates must be made available* for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

(Emphasis added).

The court excluded appellant's testimony about a 55% decline for similar reasons:

> THE COURT:  . . . When [appellant] says 55[%] decrease in gross margin[], that's a conclusion.  So somehow [appellant] came up with the conclusion.
>
> The objection is that it's extrapolated from data that's not before the [c]ourt.  So I think essentially it's a best evidence objection, but it could also be that the foundation hasn't . . . been laid factually for that conclusion.  So there's no supporting documentation, no billing records, no bank records.  You just have a witness who's pulled the number 55[%] from somewhere.  We don't know where[,] and I think that's the nature of [appellees'] objection.  So I sustain the objection.

Appellant subsequently testified that, after the purchase, eight or nine employees left the company volitionally, which resulted in a loss of "about 50[%] of th[e] gross margin."  However, the court did not "attach much weight" to appellant's testimony about the decline, noting the absence of business and bank records.

After all evidence and argument, the court ruled that appellant breached his contract with appellees by not making the third payment.  From the evidence presented, the court found the parties had agreed that a $17,000 credit or offset was due to appellant, but that appellant failed to prove any decrease in the 2018 gross margin that would trigger an adjustment to the payment under the terms of the promissory note.  The court stated, "All I heard was a conclusion on the part of the witness that there was a 55[%] reduction in the value of the business, which I appreciate and I understand, but in a court of law, that's insufficient information for me to invoke that fail-safe provision of the promissory note."

Based on these findings, the court ruled that appellees were entitled to a judgment in the amount of $208,000—i.e., the third and final installment payment reduced by $17,000.

ANALYSIS

I. Standards of Review

"On appeal from a judgment following a bench trial, '[w]e consider the evidence and all reasonable inferences fairly deducible from it in the light most favorable to the prevailing party below.'" *MCR Fed., LLC v. JB&A, Inc.*, 294 Va. 446, 457 (2017) (alteration in original) (quoting *Gov't Emps. Ins. Co. v. United Servs. Auto. Ass'n*, 281 Va. 647, 655 (2011)).

"We give the findings of fact made by a trial court that heard the evidence and evaluated the credibility of the witnesses at a bench trial the same weight as a jury verdict." *PAE Nat'l Sec. Sols., LLC v. Constellis, LLC*, 83 Va. App. 252, 264 (2025) (quoting *Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006)). "Those factual findings will not be disturbed on appeal unless they are plainly wrong or without evidence to support them." *Id.* (quoting *Collins*, 272 Va. at 749). "[U]nder [this] standard of review applicable to judges sitting as factfinders no less than jurors, we review factfinding with the highest degree of appellate deference." *Id.* (alterations in original) (quoting *Palmer v. R.A. Yancy Lumber Corp.*, 294 Va. 140, 158 (2017)).

The interpretation of the parties' contract presents a question of law that we review de novo. *Hurt v. Caton*, 83 Va. App. 745, 757 (2025).

II. First Material Breach (Assignments of Error 1, 2, and 4)

Appellant argues that the court erred in not finding that appellees committed the first material breaches of contract by (a) failing to disclose Concert Tech's financial liabilities, as required by the stock purchase agreement, and (b) violating the non-compete agreement. According to appellant, these breaches excused him from making the third payment.

"A material breach is a failure to do something that it so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 730 (2012) (quoting *Horton v. Horton*, 254 Va. 111, 115

(1997)). "[A]s a matter of Virginia common law, 'a party who commits the first breach of contract is not entitled to enforce the contract.'" *Id.* (quoting *Horton*, 254 Va. at 115); *accord Countryside Orthopaedics, P.C. v. Peyton*, 261 Va. 142, 154 (2001). "If the initial breach is material, the other party to the contract is excused from performing his contractual obligations." *Mathews*, 283 Va. at 730 (quoting *Horton*, 254 Va. at 116). Whether a party has committed a material breach presents a question of fact. *See Horton*, 254 Va. at 115.

The parties signed three agreements on the same day in October 2017: the stock purchase agreement, the non-compete and non-solicitation agreement, and the promissory note for the third payment. Because these agreements were signed contemporaneously and intended to achieve the same general objective of selling the company, they comprised a single contract. *See Countryside Orthopaedics*, 261 Va. at 151, 152 (stating that "[w]here a business transaction is based upon more than one document executed by the parties, the documents will be construed together to determine the intent of the parties" and "must be regarded as parts of one transaction, and receive the same construction as if their several provisions were in one and the same instrument" (first quoting *Daugherty v. Diment*, 238 Va. 520, 524 (1989); and then quoting *Oliver Refining Co. v. Portsmouth Cotton Oil Refining Corp.*, 109 Va. 513, 520 (1909))); *accord Richmond Postal Credit Union v. Booker*, 170 Va. 129, 134 (1938). "When such contracts are construed as if the provisions were in a single instrument, the first party to materially breach the contract cannot enforce the provisions of the integrated contract." *Parr v. Alderwoods Group, Inc.*, 268 Va. 461, 467 (2004).

### (a) Disclosure of Financial Liabilities

Appellant first argues that appellees materially breached by failing to disclose all financial liabilities as required by Article 3 of the stock purchase agreement. In Article 3, appellees represented that they had "provided [appellant] with copies of financial statements,

information and data of all sorts and all kinds requested by [appellant] prior to the [c]losing" and that these financial statements were "true, accurate, and correct" and "fairly present[ed] the financial condition of [Concert Tech]." Appellees also represented that they had no undisclosed liabilities and "no knowledge or reason to believe that [Concert Tech] will not receive payment from its clients or customers for any services rendered." Appellant argues that appellees breached Article 3 by not disclosing all financial liabilities at the October 2017 closing; by not providing a closing balance sheet until March 2018; and by telling him that all employees would remain for an additional five years.

Appellees essentially conceded in the March 2018 email chain that they had not disclosed all financial liabilities at closing. They emailed a balance sheet reflecting a "difference . . . coming to ~17K" and "sincerely apologize[d] for the difference" that had "simply escaped our attention in our reviews." Strictly speaking, therefore, appellees breached their representation in Article 3 of the stock purchase agreement that there were no undisclosed liabilities. This breach, however, did not defeat the essential purpose of the contract, which was to sell the business. *See Mathews*, 283 Va. at 730. Instead, it was a circumstance the parties anticipated and addressed in Article 6 of the stock purchase agreement regarding indemnification. In Article 6, the parties agreed that appellees would indemnify appellant for any loss or liability arising from "[a]ny nonfulfillment of any covenant" or "breach of any representation or warranty." Article 6 thus provided a mechanism for compensating appellant for liabilities that existed at closing but, for some reason, had not been disclosed. Because of this built-in remedy, appellees' nondisclosure of certain financial liabilities did not defeat the contract's essential purpose but was an anticipated occurrence. *See Mathews*, 283 Va. at 732 (holding that non-payment of a note was not a material breach preventing borrowers from enforcing conditions in a deed of trust, because non-payment was a "contemplate[d]" occurrence that did not defeat the contract's essential

purpose). The indemnification clause reflected the parties' mutual understanding that—as appellees explained at trial—additional liabilities or "little amounts" may "c[o]me up," which appellant could "adjust . . . against the future payment."

The court determined that appellees should compensate appellant for the $17,000 of undisclosed financial liabilities referenced in the March 2018 email and therefore offset the judgment by that amount. This was a proper enforcement of appellees' indemnification obligation under Article 6 of the stock purchase agreement. Because this remedy was built into the contract, appellees' initial oversight of these liabilities was not a material breach that excused appellant from making the third payment.

Similarly, appellees did not commit the first material breach by "misrepresenting" that Concert Tech's employees were "going to stay at least five years or longer." To the contrary, appellant recognized that the company's financial future was uncertain and that "all the people in the company might [go] somewhere else." He negotiated a payment plan to protect himself against the uncertainty: the parties agreed to defer the final payment for one year and decrease the amount due if appellant could prove a decline in the gross margin. Appellees' statement about the employees' status, even if it inaccurately represented the company's financial condition, did not defeat an essential purpose of the contract but reflected a risk that the parties anticipated and expressly addressed when structuring the transaction. *See Mathews*, 283 Va. at 732. Accordingly, the statement did not constitute a material breach.

(b) Non-Compete Agreement

Appellant next argues the court erred because appellees violated the non-compete agreement, which constituted a material breach. Specifically, he contends that "Nagulavancha violated the non-compete agreement by being a vice president of U.S. Software and Consulting, which operated in the same competitive field as Concert Tech." Appellant adds that

Nagulavancha was not exempt from the restriction simply because he had worked for the other company since 1999.

As the party asserting the "first material breach" doctrine as an affirmative defense, appellant had the burden of proving that Nagulavancha violated the non-compete agreement. *See Horton*, 254 Va. at 115. The court did not err in finding that appellant's evidence was insufficient.

The non-compete agreement precluded appellees from "directly or indirectly . . . solicit[ing], provid[ing] services to, or sell[ing] products to" anyone that had been Concert Tech's customer in the year prior to sale. Although Nagulavancha's company was in the same business as Concert Tech, no evidence proved that either he or his company transacted with any current or former Concert Tech customer. Appellant asks us to infer that Nagulavancha must have solicited Concert Tech's customers because, as appellant testified, the companies do "[e]xactly the same thing." But our standard of review prevents drawing factual inferences in favor of the losing party at trial. *See MCR Fed., LLC*, 294 Va. at 457. Instead, we must note the absence of evidence in the record showing any competitive activity proscribed by the agreement. *See Mona Elec. Grp., Inc. v. Truland Serv. Corp.*, 193 F. Supp. 2d 874, 876-77 (E.D. Va. 2002) (examining evidence of defendant's interactions with plaintiff's customers and holding that merely responding to customer calls, rather than initiating them, failed to prove a violation of the non-solicitation agreement); *Preferred Sys. Sols., Inc. v. GP Consulting, LLC*, 284 Va. 382, 394, 398 (2012) (finding sufficient evidence that defendant provided competitive services and affirming that billing records established damages from the breach); *Foti v. Cook*, 220 Va. 800, 803-04 (1980) (noting the stipulated evidence that an accountant had solicited and serviced a client belonging to his prior accounting firm). Appellant did not, for example, identify any Concert Tech customer that had been solicited or serviced by Nagulavancha or U.S. Software

and Consulting. *See, e.g.*, *Update, Inc. v. Samilow*, 311 F. Supp. 3d 784, 795-96 (E.D. Va. 2018) (granting injunction where plaintiff's declarations identified specific customers solicited by the defendant).

Contrary to appellant's argument, Nagulavancha's mere "position" with a company in the same field did not amount to a violation. Non-compete agreements, including the non-solicitation of customers agreement at issue here, constitute restraints on trade that are disfavored under Virginia law; accordingly, they must be strictly construed. *See Motion Control Sys. v. East*, 262 Va. 33, 37 (2001). Proving a violation of the specific agreement here required evidence of action—i.e., proof that Nagulavancha or his company serviced, sold to, or solicited a Concert Tech customer. "Customer" is defined as a "person or entity that purchased services or products . . . during the one-year period prior to the date of this Agreement." Yet, appellant offered no evidence of any Concert Tech customer that was serviced, sold to, or solicited by Nagulavancha or U.S. Software and Consulting; instead, appellant testified that he "assumed" the non-compete agreement was a blanket prohibition against working for a competitor. But merely occupying a position with a competitor was insufficient to prove a violation of this non-compete agreement. *See Motion Control Sys.*, 262 Va. at 37; *cf. Modern Env'ts v. Stinnett*, 263 Va. 491, 494-96 (2002) (holding that a non-compete clause was overbroad and unenforceable because it prohibited the employee from being employed in any capacity by a competitor, rather than limiting the restriction to activities that directly competed with the former employer's business).[2]

---

[2] Appellant suggests that appellees tried to "rehabilitate [Nagulavancha's] breach by stating he never violated the non-solicitation clause." But the non-solicitation clause appellant references was an entirely separate provision: it prohibited recruiting Concert Tech's *employees and independently contracted staff members*. Appellant never accused appellees of violating this clause. Accordingly, appellees never denied violating it. To the extent appellees ever denied "solicitation," it was in the context of the non-compete clause, which used that word to say that appellees were not allowed to "solicit" Concert Tech's *customers*. Thus, contrary to appellant's

Because the evidence was insufficient to prove any violation of the non-compete agreement, it was also insufficient to prove any material breach of contract by appellees that would preclude them from enforcing the promissory note against appellant.

### III. Promissory Note (Assignments of Error 5, 6, and 7)

Appellant argues that the court erred by "failing to apply the provision of the [p]romissory [n]ote that permitted a downward adjustment of Concert Tech's valuation, if Concert's Tech's gross margin decreased in the first year after purchase." According to appellant, the court "arbitrarily disregard[ed]" his "unrebutted testimony" that Concert Tech's gross margin decreased by 55% in the first year and erred by "not taking [a]ppellees' material breaches of the contract into consideration" when determining valuation.

The court did not err in not applying the promissory note provision that permitted a downward adjustment to the purchase price. The court excluded appellant's exhibit purportedly showing that "the company dropped almost 55[%] on the gross . . . margin" because it was a summary of underlying data that had not been shared with appellees. *See* Va. R. Evid. 2:1006 (requiring that "voluminous writings" represented in a summary exhibit "be made available for examination . . . by other parties at a reasonable time and place"). The court excluded appellant's testimony on this basis as well. And although the court subsequently allowed appellant some leeway to testify generally about the company's 50% financial decline, it ultimately found the testimony "insufficient . . . to invoke that fail-safe provision of the promissory note."

Appellant did not object to the court's exclusion of his exhibit or his corresponding testimony under Rule 2:1006. The only remaining basis for applying the promissory note's

argument, appellees did not attempt to "rehabilitate" Nagulavancha's "breach" by stating he never violated the non-solicitation clause. Instead, appellees simply stated they never violated the restriction against "soliciting" customers.

- 11 -

formula, therefore, was appellant's vague testimony about a 50% decline. Appellant attempted to connect that decline to the departure of eight or nine employees, roughly half of the workforce he started out with in 2017. In explaining that this testimony was insufficient, the court did not arbitrarily disregard it but, rather, carefully explained that it carried little weight without bank and business records. *Cf. Grayson v. Westwood Bldgs. L.P.*, 300 Va. 25, 71-72 (2021) (finding that a court's rejection of testimony was arbitrary because elsewhere the record established the testimony's credibility). Although a court cannot "*arbitrarily* disregard uncontradicted evidence," a witness cannot "make an obviously self-serving statement and expect the factfinder to be bound to believe it so long as no evidence directly refutes it. In some cases, it might be quite reasonable to disregard such a statement." *Id.* at 71.

Here, appellant made a self-serving statement about the company's decrease in gross margin, and he never shared the underlying financial data with appellees or the court. Unlike in *Grayson*, nothing else in the record supported his claim; to the contrary, the court excluded appellant's other evidence purporting to show the decline. Under these circumstances and based on this record, we conclude that it was "quite reasonable" for the court to give appellant's testimony little weight. *See id.* "[T]he credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses." *Aldridge v. Commonwealth*, 44 Va. App. 618, 639 (2004) (quoting *Collins v. Commonwealth*, 13 Va. App. 177, 179 (1991)). Because the court's weight and credibility determinations are not plainly wrong, we will not disturb them on appeal. *See Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 223-24 (2023).

Appellant further argues that the court erred by not properly accounting for all undisclosed liabilities, reducing the judgment only by $17,000 rather than a claimed $70,000. The court's ruling was not plainly wrong or without supporting evidence. The $17,000 offset

was based on appellees' concession, in the March 2018 email exchanges, that they had previously overlooked this amount. Appellees did not concede any other amounts and disputed the $70,000 figure. Although appellant argues that $70,000 is the total of several ongoing obligations listed on the closing balance sheet, it was within the court's purview to weigh the evidence, and we cannot reweigh it on appeal to reach a different conclusion. *Canales v. Torres Orellana*, 67 Va. App. 759, 787-88 (2017) (en banc). "The determination by a fact-finder in a trial court that a party has failed to sustain its burden of proof or persuasion is not subject to appellate review." *Id.* at 788.

### IV. Appellant's Claim for Damages (Assignment of Error 3)

Finally, appellant contends the court erred in denying his claim for damages. However, appellant—the defendant below—did not file a crossclaim for damages and, in his closing argument, stated that he was not claiming that appellees "owed [him] money." Having never presented the court with a claim for damages, appellant never obtained a ruling on the issue, and he therefore failed to preserve the issue for appellate review. *See* Rule 5A:18 (requiring an objection to a "ruling of the trial court" to "preserve the issue for appellate review").

### CONCLUSION

The court did not err in finding appellant liable for breach of contract in the amount of $208,000.

*Affirmed.*