COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Bumgardner and Frank
Argued at Salem, Virginia


W. DOUGLAS DRUMHELLER
                                          MEMORANDUM OPINION* BY
v.    Record No. 0163-02-3             JUDGE ROBERT P. FRANK
                                              OCTOBER 1, 2002
SANDRA JEAN BLAIR DRUMHELLER


            FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                      Thomas H. Wood, Judge

          Annie Lee Jacobs (Tracey C. Hopper; Parker,
          McElwain & Jacobs, on briefs), for appellant.

          Thomas G. Bell, Jr. (Timberlake, Smith,
          Thomas & Moses, on brief), for appellee.


     W. Douglas Drumheller (husband) appeals the trial court's

ruling on the division of assets pursuant to a premarital

agreement entered into by husband and Sandra Jean Blair Drumheller

(wife).  Husband argues the trial court erred in considering parol

evidence and misinterpreted the parties' agreement.  We agree the

court misinterpreted the agreement, and we reverse the decision.

                          I.  BACKGROUND

     Husband and wife negotiated and executed a premarital

agreement.  Husband's counsel initially drafted the agreement.

Wife then requested "[t]hat there be a provision in there where

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

we would build a residence in Augusta County . . . [and] [t]hat it would be jointly titled and considered marital property."

According to wife, this provision concerning the marital dwelling "was very important."  She explained, "[T]hat's why I signed the agreement. . . . Because it assured me that I would have a home and some financial security, because I was basically signing away everything else that I might be entitled to, whether we were married for two years or twenty."  Wife testified she would not have signed the agreement without the requested provision.[1]

Husband agreed to include such a provision, and the agreement was re-drafted.  The parties signed the agreement on March 17, 1994, after consulting with their individual attorneys.  They married on April 9, 1994.

The agreement contained waivers of spousal support and of any interest in each other's separate property.  It provided, in part:

> [Article I, 2.]  It is the parties'
> intention, after they have married, to build
> a residence on approximately four acres of
> real estate located in Augusta County,
> Virginia; it is agreed that said real estate
> and residence shall be jointly titled to
> them and shall constitute marital property,
> any other provisions of this Agreement to
> the contrary notwithstanding.
>
>    *     *     *     *     *     *     *

---

[1] Husband made no objection to this testimony.

[Article VI, 2.]  In the event of a divorce, annulment, or other event triggering the right of either party to seek a division or distribution of marital property, . . . the parties agree that their ownership interest in their marital property shall be divided equally between them.

\*     \*     \*     \*     \*     \*     \*

[Article VII]  1.  This Agreement contains the entire understanding of the parties, and there are no representations, warranties, promises, covenants or undertakings, oral or otherwise, other than those expressly set forth herein.

[Article VII]  2.  This Agreement shall not be modified or annulled by the parties hereto except by written instrument executed by both of the parties in the same manner and with the same formalities as this Agreement expressly modifying or revoking the provisions hereof by specific reference.

Prior to the execution of the agreement, husband owned eight acres in New Hope, Augusta County.[2]  Within the acreage, adjacent to a parcel with husband's existing home, was "a potential building lot, but not a developed lot, for another house" (hereinafter the New Hope property).  The parties both testified this adjoining parcel was the four acres referenced in the agreement.  Husband and wife had "walked the property and picked a spot on the property that [they] both liked as a

---

[2] Husband entered a continuing objection to wife's testimony regarding the New Hope and Fishersville properties, on the ground that the trial court could not consider parol evidence to determine "whether this intention [in the agreement] constitutes an enforceable contract to build a home."

-

potential house site."  However, the undeveloped, four-acre parcel had no "road access."

Around the time the parties married, husband began making attempts "to get road access," but each of those efforts failed. Husband then told wife, without any detail, that he was "running into problems" with the new house and, according to wife, "eventually it just sort of went by the wayside."  The testimony conflicts on whether husband discussed with wife the practicality of acquiring access.  In any event, no house was built on the four-acre parcel in New Hope.

The parties first separated on April 16, 1995.  In December 1995, husband and wife resumed their relationship by dating. Wife testified, "It was on-again/off-again until we finally reconciled and moved in together in May of 1998."

During the negotiations for reconciliation, wife indicated she would reconcile with husband if they purchased a jointly titled home and "that it would be considered marital property." Husband testified he had promised that the new property would be titled jointly and considered marital property, to be "divided up as marital property" if the parties divorced.  However, the parties did not amend the premarital agreement or memorialize their negotiations.

Husband and wife found a "house under construction" in Fishersville, Augusta County (hereinafter the Fishersville property).  The parties signed a contract to purchase this

-

property, listing the purchasers as "Warren Douglas and Sandra Jean Drumheller."

Shortly thereafter, husband unilaterally decided not to title the property jointly. Sometime in December 1995, husband informed wife he had changed his mind, and he would not title the property jointly. Wife was never informed of the closing date nor did she sign any documents waiving or assigning her rights under the purchase contract. The deed, dated December 14, 1995 and recorded January 2, 1996, conveyed the Fishersville property solely to husband.

Wife reconciled with husband and moved into the Fishersville property in May 1998. In September 1999, husband and wife moved to a farm in Augusta County. The parties finally separated on January 8, 2000. Husband sold the Fishersville property on January 14, 2000, for $210,000.

On February 8, 2000, husband filed a bill of complaint, asking for a one year, "no fault" divorce. Wife filed an answer, requesting "that the Pre-Marital Agreement be enforced to provide her with property sufficient to satisfy [husband's] obligations under the Pre-Marital Agreement or, in the alternative[,] be declared unenforceable because of the breach of this provision." Neither party asked for an equitable distribution of marital assets.

-

A hearing was conducted to determine whether the divorce should be granted and if the agreement had been breached.  Over husband's objection, the trial court allowed parol evidence to ascertain the parties' intent when entering the agreement.  The trial court ultimately ruled husband had breached the premarital agreement by not titling the Fishersville property jointly and assessed wife's damages at $105,000, half of the gross sales price of that property.  The court explained from the bench:

> [W]hat's in this agreement supports the testimony of Ms. Drumheller as to how and what and everything that they agreed to, and I guess the short, simple answer to this is that they agreed to build a residence on approximately four acres of real estate in Augusta County, the one that they preferred to build on turned out to be impractical, although only two of the three routes were really impractical . . . .  But that's beside the point, the fact is, they did construct a house [in Fishersville], that is -- says it's a contract for purchase, it is a contract to purchase, it's also a contract to construct.

>     *     *     *     *     *     *     *

> And so it isn't any question in my mind of what [wife] was promised and there isn't any question in my mind that [husband] just simply changed his mind, and I just don't think he can do that, I think this contract is definite enough, when it's got some ambiguity in it, but the evidence supplies what the Court needs, I believe there was an enforceable contract, and I think [husband] breached the contract, and we've got a good

-

measure of damages right here, and it's half the value of that Fishersville property.[3]

## II.  ANALYSIS[4]

On brief, appellant contends he did not violate the premarital agreement because the agreement did not contractually obligate him to title the New Hope property jointly.  He maintains the word, "intention," as used in the agreement, did not create an enforceable provision, but simply expressed a desire to construct a home and title the land and improvements jointly.  In the alternative, he contends the trial court erred by reforming the premarital agreement to create a promise to jointly title the Fishersville property, as opposed to the New

---

[3] The final order further explained the trial court's determination:

> After considering the evidence and the arguments, the Court finds that [husband]breached the Pre-Marital Agreement with respect to the provisions in Article I, paragraph 2, concerning the marital residence and that [wife] is entitled to payment of the sum of $105,000.00 as a result of that breach, for the reasons set forth on the record in open court.

[4] We do not address husband's contention that the trial court erred in admitting evidence of the circumstances contributing to the dissolution of the marriage because he did not specifically object to this evidence at trial.  Rule 5A:18 requires that objections be made with specificity at the time of the error in order to allow the trial court to correct the problem.  See, e.g., Campbell v. Commonwealth, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991) (en banc); Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (en banc).
Additionally, resolution of this issue would not affect the outcome of this appeal.

-

Hope property, and then assessing damages based on the sale price of the Fishersville property.  Appellant further contends the trial court erred in allowing parol evidence to ascertain the intent of the parties.

"Antenuptial agreements, like marital property settlements, are contracts subject to the rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms."  Pysell v. Keck, 263 Va. 457, 460, 559 S.E.2d 677, 678 (2002).  Therefore, we first determine whether "the parties set out the terms of their agreement in a clear and explicit writing . . . [such that the writing] is the sole evidence of the agreement."  Durham v. Nat'l Pool Equip. Co., 205 Va. 441, 446, 138 S.E.2d 55, 59 (1964).  As this determination addresses a legal issue, we conduct this review de novo.  See Tuomala v. Regent Univ., 252 Va. 368, 374, 477 S.E.2d 501, 505 (1996).

Assuming, without deciding, that the parties formed a binding contract,[5] the premarital agreement still contains ambiguity regarding the terms of the contract.  "'An ambiguity

---

[5] Husband argues the agreement on its face is not ambiguous and does not create an enforceable contract.  He also argues the trial court improperly heard parol evidence concerning the intention of the parties to make a binding contract.  Given the finding of this case, infra, we assume, without deciding, the premarital agreement created a contract.  Our conclusion in this case would be the same with or without the parol evidence on this issue.

exists when language admits of being understood in more than one way or refers to two or more things at the same time.' Renner Plumbing v. Renner, 225 Va. 508, 515, 303 S.E.2d 894, 898 (1983) (citing Berry v. Klinger, 225 Va. 201, 207, 300 S.E.2d 792, 796 (1983))." Amos v. Coffey, 228 Va. 88, 92, 320 S.E.2d 335, 337 (1984).

Article I of the premarital agreement states the parties will "build a residence on approximately four acres of real estate located in Augusta County, Virginia." No reference to the exact parcel intended by the parties is included, yet the language of the agreement suggests a particular piece of property was intended. We find the language of the agreement ambiguous on this point. Nothing within the four corners of the document indicates which particular parcel within Augusta County is intended. We must go outside the agreement to determine which particular parcel is in fact referenced.

While parol evidence generally is inadmissible, this rule "does not apply if the language of the written instrument is ambiguous." Id.

> When the language of a contract is ambiguous, parol evidence is admissible, not to contradict or vary contract terms, but to establish the real contract between the parties. The construction of an ambiguous contract is a matter submitted to the trier of fact, who must examine the extrinsic evidence to determine the intention of the parties.

Tuomala, 252 Va. at 374, 477 S.E.2d at 505 (citation omitted).

-

> "It is the duty of the court to construe the contract made between the parties, not to make a contract for them . . . . The facts and circumstances surrounding the parties when they made the contract, and the purposes for which it was made, may be taken into consideration as an aid to the interpretation of the words used, but not to put a construction on the words the parties have used which they do not properly bear."

Flippo v. CSC Assocs. III, L.L.C., 262 Va. 48, 64, 547 S.E.2d 216, 226 (2001) (quoting Seaboard Air Line R.R. Co. v. Richmond-Petersburg Turnpike Auth., 202 Va. 1029, 1033, 121 S.E.2d 499, 503 (1961)).

Wife argues husband failed to title the Fishersville property jointly, thereby breaching the contract. The uncontested facts prove husband and wife reconciled based upon an unwritten agreement that he would purchase and title the Fishersville property jointly and that the property would become a marital asset. Both husband and wife were contract purchasers for the Fishersville property. Husband conceded he then changed his mind and purchased the property solely in his name.

Husband later sold the Fishersville property for $210,000. The trial court used this sum to calculate wife's damages for husband's breach of the premarital agreement. We agree with husband that the trial court erred.

The uncontroverted evidence proves the premarital agreement referred only to the New Hope property. Neither party considered any other site prior to or at the time they

-

negotiated and signed the premarital agreement. Joint ownership of the Fisherville property was considered only as a condition of the reconciliation, not as an amendment to the original premarital agreement. Parol evidence is permitted only to clarify the parties' intentions at the time of negotiations and contract formation, not after the contract is signed. <u>See</u> <u>Seaboard Air Line R.R. Co.</u>, 202 Va. at 1033, 121 S.E.2d at 503 (noting courts can consider the "facts and circumstances surrounding the parties <u>when they made the contract</u>" (emphasis added)). Even if the parties intended to amend their original contract, wife did not have the premarital agreement amended in writing, as required by its provisions, when she agreed to return to husband.

The language of the contract, although vague, does not suggest that <u>any</u> real estate in the county will be jointly titled. The reference to "four acres," especially considering the parol evidence that the parties had chosen the four acres in New Hope prior to signing the agreement, indicates the premarital agreement referred to a specific parcel.

Each party was represented by counsel. If wife wanted <u>any</u> real estate in the county jointly titled, she could have made that demand. She did not do so. Instead, she asks this Court to expand the original intention of the parties. As we cannot use parol evidence to vary or contradict the original terms of the agreement, we cannot interpret the contract as wife

-

suggests.  See Tuomala, 252 Va. at 374, 477 S.E.2d at 505.  See also Lansdowne Dev. Co. v. Xerox Realty Corp., 257 Va. 392, 400, 514 S.E.2d 157, 161 (1999) ("[W]e will not insert by construction, for the benefit of a party, a term not express in the contract.").

The trial court erred in holding husband breached the premarital agreement by failing to jointly title the Fishersville property.  That parcel is not included in the premarital agreement.[6]  The trial court effectively reformed the agreement to include a broader provision encompassing any home, wherever located, when only the New Hope property was the object of the agreement.  No evidence of mutual mistake, misrepresentation, or fraud exists which would allow such a reformation of the agreement.[7]  See Ward v. Ward, 239 Va. 1, 5, 387 S.E.2d 460, 462 (1990).

Since the seller, husband, and wife agreed the Fishersville property would be conveyed to both husband and wife, wife may

_____

[6] Wife makes no argument based on the New Hope property's value, and no evidence on its value, with or without a house, was presented at trial.  The only theory of breach, and the only evidence for possible damages, presented by wife was the failure of husband to jointly title the Fishersville property.

[7] Wife does not contend fraud or unconscionability.  She does not argue husband deliberately or fraudulently failed to build a residence on the New Hope parcel.  In fact, wife does not dispute husband's testimony that he could not secure access to that parcel.  At trial, she agreed with husband's proffer "that there was no practical roadway through that property to give access to the four acres."

-

have some recourse for the violation of that sales contract. Here, however, wife seeks relief under the premarital agreement, not the Fishersville property contract. As the premarital agreement referred only to the New Hope property, the trial court erred in awarding her the requested relief of one-half of the Fishersville property's sale price.

## CONCLUSION

We conclude the trial court erred in concluding husband breached the premarital agreement when he failed to jointly title the Fishersville property and in awarding damages based on that sale. We vacate the $105,000 judgment against husband and enter final judgment in favor of husband.

<u>Reversed and final judgment.</u>

-

Bumgardner, J., dissenting.

I respectfully dissent and would affirm the trial court.

The contract was ambiguous. The trial court properly considered the extrinsic evidence when construing the agreement between the parties, when determining the true intention of the parties at the time they entered the contract. It heard the parties and assessed their credibility firsthand.

The trial court found that the parties intended the wife to have an interest in the marital residence they would build after the marriage. That was the true intention at the time they entered the contract being construed. The parties did not intend to limit the wife's interest to a residence they contemplated building behind the house where the husband lived at that time. The finding comports with the supporting evidence of the situation of the parties, the subject matter of their agreement, and the object they intended to accomplish. Reid v. Boyle, 259 Va. 356, 367, 527 S.E.2d 137, 143 (2000) (citing High Knob, Inc. v. Allen, 205 Va. 503, 507-08, 138 S.E.2d 49, 53 (1964)). The finding further comports with portions of the husband's own testimony and with his conduct in subsequently executing a joint contract to purchase the residence they actually acquired.

The record supports the trial court's findings. I would hold the trial court granted appropriate equitable relief by decreeing the relief that it did.

-