# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Hiawatha Pierce
and Monica Pierce

v.

Wells Fargo Bank,
Samuel I. White, P.C.,
and SunTrust Bank, N.A.

January 6, 2012

Case No. (Civil) CL11-1373

BY JUDGE RANDALL D. SMITH

This matter is before the Court on the Demurrer of Defendants' Wells Fargo and Samuel I. White, P.C., and the Demurrer of SunTrust Bank, N.A., to Plaintiffs' Complaint. The Court has considered the Demurrers, SunTrust's Memorandum in Support, Plaintiffs' Memorandum in Opposition, and the arguments of counsel. The Court is now prepared to rule on the matter.

## Introduction

The facts as pleaded by Plaintiffs are as follows. Plaintiffs owned certain real estate in Chesapeake. On March 4, 2005, Plaintiffs used that property to secure a mortgage loan serviced by Wells Fargo in the amount of $241,200. On September 22, 2009, Plaintiffs received a letter from Wells Fargo stating that they may be eligible for a new, lower payment. Plaintiffs retained Real Estate Resolutions to assist them in the loan modification process. Plaintiffs and Real Estate Resolutions requested a loan modification and submitted the documents requested by Wells Fargo numerous times. Plaintiffs were placed on a trial period effective December 1, 2009. Wells Fargo told Real Estate Resolutions that, after Plaintiffs successfully completed the trial

period, they would receive a final loan modification with an interest rate of 3.75%.

Plaintiffs allege that they made their final trial payment in February 2010 and complied with all terms of the trial payment plan. Over the next several months, Plaintiffs worked with Real Estate Resolutions to get the final modification documents. Plaintiffs allege that they were approved for a loan modification on July 22, 2010, evidenced by an agreement sent to them by Dan Fenton, Loan Adjuster Loss Mitigation for Wells Fargo. However, the interest rate in the agreement was not the previously agreed-upon rate. On July 29, 2010, Real Estate Resolutions informed Wells Fargo of the interest-rate discrepancy and sent Plaintiffs' financial information to Wells Fargo to correct the error. Thereafter, Real Estate Resolutions continued to submit requested documents and followed up with Wells Fargo regarding Plaintiffs' final loan modification agreement.

On January 28, 2011, Samuel I. White, P.C., sent Plaintiffs a notice of foreclosure notifying them that their property was to be foreclosed upon on February 15, 2011. Plaintiffs contacted Wells Fargo on February 9, 2011, and were told that a "coding" error that had occurred on February 4, 2011, had "accidentally remov[ed] the Plaintiffs from the modification program and a foreclosure sale that was set for February 15, 2011." Plaintiffs were told that the coding error was a mistake, the mistake would be fixed, Plaintiffs' file would be set back up for modification, everything else on Plaintiffs' file was satisfactory, and Plaintiffs' loan modification was approved.

On February 15, 2011, Plaintiffs' house was sold at foreclosure. The same day, Real Estate Resolutions wrote to Wells Fargo regarding the foreclosure. Wells Fargo replied that foreclosure occurred because documents requested from Plaintiffs had to come from Plaintiffs only. Plaintiffs allege that this is in direct contradiction to Wells Fargo's actions in contacting Real Estate Resolutions for information directly and accepting documents from Real Estate Resolutions on behalf of Plaintiffs.

*Standard of Review*

"A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Glazebrook v. Board of Supervisors of Spotsylvania County*, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003). Further, a demurrer "admits the truth of the facts contained in the pleading to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations. A demurrer does not, however, admit the correctness of the pleader's conclusions of law." *Taboada v. Daly Seven, Inc.*, 271 Va. 313, 317, 626 S.E.2d 428, 429 (2006); *Harris v. Kreutzer*, 271 Va. 188, 195, 624 S.E.2d 24, 28 (2006).

To survive a challenge by demurrer, a "pleading must be made with 'sufficient definiteness to enable the court to find the existence of a legal

basis for its judgment'." *Eagle Harbor, L.L.C. v. Isle of Wight County*, 271 Va. 603, 611, 268 S.E.2d 298, 302 (2006) (quoting *Moore v. Jefferson Hospital, Inc.*, 208 Va. 438, 440, 158 S.E.2d 124, 126 (1967)). Rule 1:4(d) of the Rules of the Supreme Court of Virginia states: "Every pleading shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense."

A trial court is "not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a [Complaint], but only may determine whether the factual allegations of the [Complaint] are sufficient to state a cause of action." *Harris*, 271 Va. at 195-96, 624 S.E.2d 24 (quoting *Riverview Farm Assocs. Va. Gen. P'ship v. Board of Supervisors*, 259 Va. 419, 427, 528 S.E.2d 99, 103 (2000)); *accord Almy v. Grisham*, 273 Va. 68, 76, 639 S.E.2d 182, 186 (2007) ("[A] demurrer presents an issue of law, not an issue of fact.").

Virginia Code § 8.01-273 states, in part: "All demurrers shall be in writing and shall state specifically the grounds on which the demurrant concludes that the pleading is insufficient at law. No grounds other than those stated specifically in the demurrer shall be considered by the court."

*Analysis*

## A. *Breach of Contract by Wells Fargo*

Plaintiffs allege that Wells Fargo breached the parties' loan modification agreement by foreclosing upon Plaintiffs' property. Plaintiffs and Wells Fargo mutually and voluntarily agreed to modify Plaintiffs' existing mortgage. The agreement set forth conditions to be met by Plaintiffs, and Plaintiffs complied with all of the conditions.

Wells Fargo demurs that the breach of contract claims fail to state a claim for relief because Plaintiffs failed to allege the existence of a legally enforceable obligation. Plaintiffs fail to allege an offer by Wells Fargo or a mutual acceptance of such offer by Plaintiffs. A solicitation to apply for Home Affordable Modification Program (HAMP) loan modification is not an offer, and the Complaint is void of allegations that Wells Fargo agreed to modify Plaintiffs' loan. Wells Fargo argues that, even if Plaintiffs did allege that the parties agreed to a loan modification, it is an "agreement to agree" and not enforceable.

Plaintiffs respond that the parties entered into a binding contract because the Plaintiffs had completed the application process and were approved and offered a Trial Period Plan (TPP), which they completed. By completing the TPP, Plaintiffs satisfied the condition precedent and triggered contractual obligations of both parties. Plaintiffs accepted the offer via specific performance when payments were sent in accordance with the TPP.

Alternatively, Plaintiffs argue that their payments were an offer and Wells Fargo accepted the offer by cashing the checks. Payment under the TPP is not simply performance of a pre-existing duty because Plaintiffs provided new financial information, established new escrow accounts, made material representations to the accuracy of the information provided, and made payments specified by Wells Fargo. These actions constitute consideration and establish the TPP as a binding contract.

Plaintiffs respond, in the alternative, that Wells Fargo breached the implied covenant of good faith and fair dealing in the contract established by the Note and the Deed of Trust. By providing false assurances regarding the disposition of Plaintiffs' home, falsely assuring Plaintiffs about the status of their loan modification, and failing to meet government prerequisites for the foreclosure of the home, Defendants have failed to act in good faith.

Courts that have considered loan modification carried out under HAMP have determined that no private cause of action is granted under HAMP and have similarly rejected claims that a TPP creates a separate basis for breach of contract. *See Bourdelais v. J. P. Morgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 35507, at *8-20 (E.D. Va. 2011). Plaintiffs fail to allege offer and acceptance of the TPP because they allege in the Complaint that the enforceable contract is the loan modification agreement, not the TPP. There has not been offer, acceptance, and consideration alleged for the loan modification agreement. The Complaint has failed to allege the necessary requirements for a valid contract and does not allege anything about a breach of the implied covenant of good faith and fair dealing. Therefore, the portion of Wells Fargo and Samuel I. White's Demurrer regarding breach of contract is sustained.

## B. *Negligence by Wells Fargo*

Plaintiffs allege that Wells Fargo was negligent in the processing and determination of Plaintiffs' loan modification application by giving contradictory and misleading communications to Plaintiffs and by failing to correct the "coding" error after it had been brought to their attention. Plaintiffs allege that a duty of care arises from contractual dealings with professionals and Wells Fargo voluntarily assumed that duty when it agreed to modify Plaintiffs' mortgage. This duty of care includes timely and accurate processing of applications and contact between the bank and borrowers. Wells Fargo breached this duty. Plaintiffs detrimentally relied on Wells Fargo's statements that mistakes would be fixed and the loan modification would be processed as agreed.

Wells Fargo demurs that tort remedies are not available for losses suffered as a result of a breach of a duty assumed only by agreement. The law of the contracts, not torts, applies because Plaintiffs have alleged nothing more than disappointed economic expectations. Plaintiffs do not allege

any separate property or personal injury to support a tort claim. Plaintiffs simply allege Wells Fargo owed them a duty of care in handling their loan modification.

Plaintiffs respond that violation of a statute can constitute a violation of the "reasonable man" standard under the negligence per se doctrine. Plaintiffs are members of the class of persons HAMP is designed to protect. But for Wells Fargo's actions, Plaintiffs would not have suffered injuries, including lowered credit scores, increased and prolonged personal debt, and loss of the family home. These are more concrete damages than disappointed economic expectations.

Plaintiffs respond, in the alternative, that if they are found to have only lost a business expectancy, Wells Fargo's actions give rise to a claim of tortious interference with a contract or business expectancy. A business relationship exists between the parties. But for the conduct of Defendants, an economically beneficial expectancy was reasonably certain to be realized by Plaintiffs. Plaintiffs argue that they have stated a plausible claim for negligence, or, in the alternative, a plausible claim for tortious interference.

Tort law is not designed to compensate plaintiffs for breaches of duties assumed by contractual relationships. *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988) (citing *Kamler Corp. v. Haley*, 224 Va. 699, 706, 299 S.E.2d 514, 517 (1983)). Plaintiffs make no allegations of fact sufficient to support a common law duty and therefore, the portion of Wells Fargo and Samuel I. White's Demurrer regarding negligence is sustained.

## C. *Equitable Estoppel Against Wells Fargo*

Plaintiffs allege that, if Wells Fargo should claim there was no loan modification contract, it should be estopped from denying the existence of the loan modification because Plaintiffs relied on Defendant's promise to their detriment. It was reasonably foreseeable to Wells Fargo that Plaintiffs would rely on the promised loan modification agreement. Plaintiffs forewent other opportunities to prevent foreclosure, and their home has been foreclosed upon, and they are facing eviction as a result.

Wells Fargo demurs that Plaintiffs are attempting to set forth a promissory estoppel claim because they relied, to their detriment, on Wells Fargo's promise to review them for a loan modification. Wells Fargo argues that promissory estoppel is not a cause of action in Virginia.

Plaintiffs respond that equitable estoppel governs this case. If there is a misrepresentation, reliance, change of position, and detriment, then a defendant should be estopped from claiming there is no contract. Plaintiffs forewent numerous other foreclosure avoidance options based on the representations of Wells Fargo.

It is questionable whether or not promissory estoppel is "applied" or exists in Virginia. *See Tuomala v. Regent Univ.*, 252 Va. 368, 376, 477 S.E.2d 501, 506 (1966) ("Turning to the claim of promissory estoppel, we first note that we have not applied the doctrine in this Commonwealth."). *But see Lataif v. Commercial Indus. Constr., Inc.*, 223 Va. 59, 63, 286 S.E.2d 159, 161 (1982). Plaintiffs argue that they rely upon equitable estoppel as opposed to promissory estoppel. To establish a claim of equitable estoppel without proving fraud, the plaintiff must show that he reasonably relied on representation and conduct of the defendant such that he changed his position to his detriment. *Tuomala*, 252 Va. at 376, 477 S.E.2d 501, 506 (citing *Stewart v. Lady*, 251 Va. 106, 113, 465 S.E.2d 782, 785 (1996)).

By order entered August 9, 2011, the parties agreed that certain written documents and correspondence are to be considered by the Court along with the allegations in the Complaint.

Reasonable reliance is conceptually separate from detrimental reliance. Reliance cannot be reasonable if the person seeking estoppel knew or had an equal opportunity to know the true facts. The foreclosure sale was known by information provided by the trustee and Defendants SunTrust and Wells Fargo also Plaintiffs had an equal opportunity to know the true facts.

More important in this case is the element of detriment. Plaintiffs have not sufficiently pleaded a change of position in reliance to their detriment. Damages will be limited to a person's change of position. Plaintiffs must show they did something different from what they otherwise would have done and that doing so was costly.

Plaintiffs were bound by the terms of their Note and Deed of Trust. This obligated them to pay pursuant to the terms of the Note or face foreclosure. The general conclusion that they changed their position by foregoing other opportunities to prevent foreclosure is insufficient. Plaintiffs stood in the same position as always, either paying under the terms of their Note or facing foreclosure for failure to pay their mortgage payments.

There are other limitations on the use of estoppel. Here, Plaintiffs seek to enforce discussions to reach an agreement to modify the existing written contracts, i.e. the Note and Deed of Trust. To allow Plaintiffs' claim would create a cause of action based upon unilateral interpretations of discussions to modify existing contracts which must be in writing. *Colonial Ford Truck Sales, Inc. v. Schneider*, 228 Va. 671, 676, 325 S.E.2d 91, 94 (1985). This would effectively repeal the Virginia Statute of Frauds. *Id.* Therefore, the portion of Wells Fargo and Samuel I. White's Demurrer regarding equitable estoppel is sustained.

D. *Breach of Contract by Substitute Trustee, Samuel I. White, P.C.*

Plaintiffs allege that, because the substitute trustee, Samuel I. White, P.C., is an appointed agent for Wells Fargo, they are bound to the same

contractual terms as Wells Fargo. As such, the substitute trustee breached the contract by following through with foreclosure proceedings without first receiving certification from Wells Fargo that foreclosure was proper.

Wells Fargo demurs that the breach of contract claim against Samuel I. White, P.C. is based on the purported contract with Wells Fargo and should be dismissed for the same reasons. See Section III(A), *supra*, for discussion of the breach of contract action against Wells Fargo. Based upon the reasons expressed therein, the portion of Wells Fargo and Samuel I. White's Demurrer regarding breach of contract by the substitute trustee is sustained.

### E. *Rescission of the Foreclosure Sale and Injunction Against Eviction*

Plaintiffs allege that they entered into a loan modification contract with Defendant. Wells Fargo breached the agreement, resulting in the wrongful foreclosure of Plaintiffs' house. There is a high likelihood of succeeding on the merits of the case. Plaintiffs' home is unique to them, and a similar property cannot be obtained. Rescission of the foreclosure sale is a feasible, practicable, and effective way to vindicate Plaintiffs, whose hardship substantially outweighs that of Defendants. Plaintiffs allege that they are entitled to specific performance on the contract, resulting in rescission of the foreclosure sale and implementation of the agreed-upon loan modification.

Wells Fargo demurs that Plaintiffs' claim for rescission is based on an alleged loan modification contract. Because there was no legally enforceable contract and Plaintiffs are unlikely to succeed on the merits of their claim, the request for rescission must fail.

Although Plaintiffs have attempted to allege a cause of action for breach of contract, the Complaint is insufficient to allege a breach of contract. (See Section III(A), *supra*.) The portion of Wells Fargo and Samuel I. White's Demurrer regarding rescission of the foreclosure sale is sustained.

### F. *Damages*

Plaintiffs request compensatory and punitive damages in the amount of $1.5 million, specific performance of Plaintiffs' loan modification contract by Wells Fargo, and an injunction against SunTrust Bank, N.A., and Shapiro & Burson from pursuing further eviction proceedings against Plaintiffs.

Wells Fargo demurs that Plaintiffs offer no factual support for their request for punitive damages, thus the Court should dismiss the request.

Punitive damages are not favored in Virginia because they are a form of penalty. *Philip Morris, Inc. v. Emerson*, 235 Va. 380, 407, 368 S.E.2d 268, 283 (1988). A plaintiff seeking punitive damages must allege willful or wanton behavior, which was "undertaken in conscious disregard of another's rights, or with reckless indifference to consequences with the defendant

aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Green v. Ingram*, 269 Va. 281, 291-92, 60 S.E.2d 917, 923 (2005) (citing *Woods v. Mendez*, 265 Va. 68, 76-77, 574 S.E.2d 263, 268 (2003)). Plaintiffs allege no facts that evidence willful or wanton behavior. Therefore, the portion of Wells Fargo and Samuel I. White's Demurrer regarding punitive damages is sustained.

### G. *Allegations Regarding the Home Affordable Modification Program (HAMP) and Trial Period Plan (TPP)*

Wells Fargo argues, in addition to the previous arguments, that all of Plaintiffs' claims are disguised HAMP claims. HAMP does not create a private cause of action; therefore Plaintiffs' claims should be dismissed because Plaintiffs have failed to state a cause of action.

Plaintiffs respond that, although their claims relate to HAMP, they do not arise from HAMP. The claims asserted arise from state contract and tort law.

HAMP does not create a private cause of action against mortgage servicers. *Pennington v. PNC Mortgage*, 2010 U.S. Dist. LEXIS 143157 at *10 (E.D. Va. 2010). Instead, it creates a private right of action against the Secretary of the Treasury with enforcement delegated to Freddie Mac. *Id.* But not all cases involving HAMP "arise from" the federal statute. *See Melton v. SunTrust Bank*, 2011 U.S. Dist. LEXIS 57499 (E.D. Va. 2011) (remanding to Chesapeake Circuit Court because "HAMP is merely the backdrop of a state law dispute between the parties. The claims themselves [breach of contract and negligent processing of plaintiff's mortgage modification application] do not arise under federal law."); *Forbes v. Wells Fargo Home Mortgage*, 2011 U.S. Dist. LEXIS 85682 (E.D. Va. 2011) (remanding to Hampton Circuit Court because plaintiffs' allegations of breach of contract, negligence, unjust enrichment, and constructive fraud did not "turn on HAMP"); *Paine v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 83016 (E.D. Va. 2011) (remanding to Norfolk Circuit Court because plaintiff's contract and tort claims "do not arise under federal law"). Plaintiffs' arguments are essentially those made in *Bourdelais v. J. P. Morgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 35507 (E.D. Va. 2011). This Court adopts the same reasoning as that of Judge Hudson. Therefore, the portion of Wells Fargo and Samuel I. White's Demurrer regarding the HAMP and TPP is sustained.

### H. *SunTrust Bank's Demurrer to the Complaint*

SunTrust demurs that Plaintiffs have failed to state a claim upon which relief can be granted against them. Plaintiffs' Complaint fails to advance adequate grounds to set aside a lawfully conducted foreclosure sale, which

can be set aside in only a few circumstances. At no time did Plaintiffs and Wells Fargo enter into an agreement in which Wells Fargo agreed not to foreclose. Plaintiffs were in default, and Wells Fargo exercised its right to foreclose. Injunctive relief is an extraordinary remedy, and it is unlikely that Plaintiffs will succeed on the merits.

There are only two sentences relating to SunTrust in Plaintiffs' Complaint. The first states in Paragraph 53: "Currently a *Summons for Unlawful Detainer* has been issued against the Plaintiffs in the General District Court of the City of Chesapeake by the law firm of Shapiro and Burson, L.L.P., on behalf of SunTrust Bank, N.A." The second sentence is in the prayer for relief: "Plaintiffs further ask the court to permanently enjoin Suntrust Bank, N.A., and Shapiro & Burson from pursuing any further eviction proceedings against the Plaintiffs." This is not sufficient to state a claim against SunTrust Bank. Additionally, it is unlikely that Plaintiffs will succeed on the merits of their claim. (See above.) Therefore, SunTrust Bank's Demurrer is sustained.